HAROLD WESTON, PLAINTIFF IN ERROR, VS. CALHOUN JONES, DEFENDANT IN ERROR.

1. Under Section 1656, Revised Statutes, defendant's affidavit to the effect that he was not at the time plaintiff's attachment affidavit was filed indebted to plaintiff in the sum demanded, or any part thereof, tenders a proper traverse of the attachment affidavit as to the debt or sum demanded.

2. Upon a traverse in attachment of the debt or sum demanded it is the duty of the court, under Section 1656, Revised Statutes, upon seasonable application, in all cases where the issues have not already been made up in the main suit, to require the formal pleadings in the main suit to be made up and the issues therein settled by special order without reference to the time fixed by the rules or statutes for pleading in regular course,

in order that the issues in the main case thus made up may be submitted to the court or jury along with the issues raised by the traverse of the special ground of attachment alleged.

3. Attachments in aid of foreclosures on personal property authorized by Section 1640, Revised Statutes, are statutory chancery writs, issued by, returnable to and under the control of the chancery court foreclosing the mortgage. The court from which such writ issues has full control over it and power to discharge it if improvidently issued, to the same extent as it has power over other equitable writs, but the proceedings for its discharge must be taken under the rules of chancery practice, and not under statutory provisions relating only to general attachments at law.

4. Section 1656, Revised Statutes, regulating proceedings to dissolve attachments at law, has no application to attachments in aid of foreclosures on personal property authorized by Section 1640, Revised Statutes.

Writ of error to the Circuit Court for Columbia county.

The facts in the case are stated in the opinion of the court.

*A. J. Henry*, for Plaintiff in Error.

*No Appearance* for Defendant in Error.

CARTER, J. :

Plaintiff in error on February 25, 1893, filed his bill in equity in the Circuit Court of Columbia county, against defendant in error and one James E. Young, the purchaser of a portion of the mortgaged property, to foreclose a mortgage upon personal property executed by Jones to Weston on October 20, 1891. On the same day Weston's attorney filed his affidavit alleging substantially that Jones was justly indebted to his client in

the sum of $2,000 which was actually due; that the debt was evidenced by four promissory notes dated October 20, 1891, and secured by a mortgage of same date upon certain personal property, describing it; that a bill had been filed to foreclose said mortgage; that said property had remained in possession of Jones; that affiant had reason to believe and did believe that the mortgaged property would be concealed so that it would not be forthcoming to answer a demand in foreclosure. A bond on behalf of Weston was filed payable to Jones in the sum of $4,000, which, after reciting that Weston had filed a bill to foreclose the mortgage described in the affidavit and had applied for an attachment in aid of foreclosure, was conditioned to pay all costs and damages the defendant Jones might sustain in consequence of improperly suing out said attachment. A writ of attachment was issued by the clerk commanding the sheriff to attach and take into custody the property embraced in the mortgage, and hold same or so much thereof as could be found sufficient to satisfy Weston in the sum of $2,000 and costs, which was levied upon a portion of the mortgaged property. On March 13, 1893, Jones filed his affidavit to the effect that Weston's attorney did not believe or have reason to believe that the mortgaged property would be concealed so that it would not be forthcoming to answer a demand in foreclosure, and that affiant is not, and was not at the time of the filing of the attachment affidavit, indebted to Weston in the sum of $2,000, the amount demanded, or any part thereof. Weston moved to strike the latter clause of this affidavit upon the ground that it was, in effect a plea of *nil debit*, and therefore not a proper traverse of the attachment affidavit. The court denied this motion and Weston then applied to the court for an order requiring formal pleadings to be filed as to the debt or sum demanded

by him, which application the court also denied, and set
the motion to dissolve for hearing on March 28, 1893.
On the last named date Jones made a formal demand
for a jury to try the issues joined on the motion to dis-
solve, and the court directed the sheriff to summon a
jury from the body of the county for that purpose. Upon
the return of the sheriff a jury was empaneled and a
trial entered upon, resulting in a verdict for Jones, as
well upon his denial of the debt claimed as upon his de-
nial of the special ground of attachment alleged. Wes-
ton moved for a new trial upon the ground that the ver-
dict was contrary to the evidence, the weight of the evi-
dence, the law, and the charge of the court. This mo-
tion was overruled and judgment upon the verdict was
entered dissolving the attachment and adjudging costs
against Weston, from which he sued out this writ of
error.

The evidence introduced and proceedings had upon
the trial before the jury are embraced in a bill of excep-
tions incorporated into the transcript of record. Errors
are assigned upon the rulings denying the motion to re-
quire formal pleadings, refusing to strike the second
clause of the traverse affidavit, denying the motion for a
new trial, and admitting in evidence certain documents
and parol testimony objected to.

The proceeding by attachment was regarded by the
court below and by the parties as a legal proceeding
subject to the rules prescribed by the Revised Statutes
for general attachments at law, and the proceedings
adopted for its dissolution were those prescribed by sec-
tion 1656 of those statutes. As this was the theory upon
which the case was tried below, we shall first consider if
there be error in the proceeding from that standpoint.
The section referred to (Revised Statutes, §1656) reads
as follows: "Proceedings to Dissolve. The court to

which such attachment is returnable shall always be open for the purpose of hearing and deciding motions to dissolve such attachments, and in any case upon oath in writing made by the defendant and tendered to the court that any allegation in the plaintiff's affidavit is untrue, a trial of such traverse shall be had, and if the allegation in the plaintiff's affidavit which is traversed is not sustained and proved to be true, the attachment shall be dissolved. If such affidavit shall traverse the debt or sum demanded, the judge may, upon application of either party, require formal pleadings as to the debt or sum demanded to be filed in such time as he may fix, and the issue of fact, if any raised by such pleadings shall be tried as hereinbefore provided and at the same time as the issue, if any, made by the affidavit as to the special cause assigned in plaintiff's affidavit. Issues of law raised by such pleadings shall be determined and given effect to by the judge as in other controversies at law. Upon the demand of either party, a jury to be summoned from the body of the county upon the order of the judge, shall be empaneled to try the issue joined as aforesaid; but a Circuit Judge shall not be required in vacation to go to any county in which he does not reside, to try any such motion to dissolve." Assuming that this section applies to the present proceeding, we hold,

I. That the motion to strike the latter clause of the traverse affidavit was correctly decided by the court below. The statute expressly authorizes a defendant in attachment to deny the truth of any allegation in plaintiff's affidavit, and this clause of defendant's affidavit was strictly a denial of the plaintiff's allegation as to the debt due, and was therefore entirely sufficient.

II. That the court should have granted plaintiff's motion to require formal pleadings to be filed as to the

debt or sum demanded. The original act (section 5, Chap. 741, approved February 15, 1834,) authorizing motions of this character to dissolve attachments by traverse, gave the courts no authority to require pleadings to determine the issues to be tried under a traverse of plaintiff's affidavit as to the debt due; it simply authorized the defendant to make oath in writing that the allegations of the plaintiff's affidavit were untrue, either as to the debt or sum demanded, or as to the special cause assigned for granting such attachment; and upon tender of such oath, required the court, or a jury if demanded by defendant, to hear evidence upon the issue so presented, and if the allegations of plaintiff's affidavit were not sustained and proved to be true, the attachment was required to be dissolved. This section of the act of 1834, with a subsequent modification authorizing either party to demand a jury upon trial of such motions, remained in force controlling motions of this character, until the adoption of our Revised Statutes in 1892. As, in ordinary attachments at law, the plaintiff's affidavit was and still is not required to state in detail the nature or character of the debt sued for, but simply in a general way that defendant is indebted to plaintiff in a certain sum of money; and the defendant's affidavit was and still is a simple denial of that general and very indefinite allegation of plaintiff's affidavit, it is quite evident that the real issue arising upon such a traverse, in cases where the issues had not been made up in the suit in which the attachment was sued out, could never be ascertained until defendant had closed his evidence; neither could it be known what particular debt or cause of action the defendant was expected to meet until plaintiff's evidence was all in, and the spectacle was presented of a common law court, trying cases, in which neither the court, parties nor jury could know what particular cause of action

or defense was in issue between the parties until developed by the evidence on the 'trial. The plaintiff could under the broad allegations of his affidavit prove any debt due him by defendant, upon any cause of action for which attachment would lie; and the defendant in opposition could prove that he never owed such a debt; that it had been paid; or any fact which would show that at the time plaintiff brought suit or sued out the attachment the defendant did not owe the particular debt proven. To remedy these very grave objections the legislature, by adopting the Revised Statutes, amended this section of the act of 1834 to read as above quoted. This quoted section of the Revised Statutes is essentially remedial in respect to the points suggested, and should be liberally construed to advance the remedy and suppress the mischief. The obvious purpose and meaning of the section is to grant power to require the formal pleadings in the suit begun by the attachment, or in which it issued, to be made up and the issues therein settled, by special order, without reference to the time fixed by rules or statutes for pleading in regular course, in order that the issues in the main case thus made up may be submitted to the court or jury along with the issue raised by the denial of the special ground of attachment alleged. By this means the parties are not taken by surprise upon the trial, and the verdict of one and the same jury settles the merits of the main suit, as well as the propriety of the attachment. The judge of the court below refused the motion in this case, evidently believing that the use of the word "may" invested him with a discretion as to whether he should require the filing of pleadings in such cases; but we entertain a contrary opinion. It is a familiar rule that when a statute directs the doing of a thing for the sake of justice, the word "may" means the same as "shall." Mitchell v. Duncan,

7 Fla. 14.   Again, permissive words in a statute respecting courts or officers are imperative in those cases where individuals have a right that the power conferred be exercised.   Sutherland on Statutory Construction, §§461, 462.   Viewed in this light we think the word "may" in this section is not used in the sense of giving the courts or judges a *discretion* to refuse an application of this character seasonably made in cases where the issues have not already been made up in the main suit, but to *confer authority* upon the court to require such pleadings when duly applied for.   Macdougall v. Paterson, 11 C. B. (73 E. C. L.) 755. · In this case the defendant had filed no answer to the bill of complaint, and no issues had been made up in the foreclosure suit, as to the debt or sum demanded.   Either party was, therefore, under the statute entitled to an order requiring formal pleadings upon demands therefor seasonably made.

III.   But we are of opinion that the section referred to has no application to attachments in aid of foreclosure, and that the proceedings at law, submitting to a jury the issues arising upon the traverse of the attachment affidavit, and the entry of a judgment at law upon their verdict dissolving the attachment were irregular.   In the Revised Statutes of 1892 (§§1635-1665), the statutes intended to remain in force, relating to attachments, with some amendments and additions are consolidated in Chapter 1, Title 7, under the head "of special statutory proceedings at law."   Section 1635 provides that any creditor may have an attachment at law against the goods, chattels, lands and tenements of his debtor under the circumstances and in the manner thereinafter provided; section 1636, that such attachment shall issue from the court having jurisdiction of the amount claimed, or, in certain cases, by justices of the peace or the county judge, returnable to the Circuit or County Court; section 1637 prescribes the grounds

for attachment upon debts actually due; section 1638, upon debts not actually due; section 1639, against executors and administrators, and section 1640 reads as follows: "In aid of foreclosures on personal property. Any creditor who may be commencing or who may have commenced a suit to foreclose a mortgage on personal property the possession of which has remained in the debtor, may have an attachment against such property whenever: 1. The said property will be concealed so that it will not be forthcoming to answer a demand on foreclosure, or 2. The said property will be removed beyond the jurisdiction of the court foreclosing the mortgage." Section 1641 requires an affidavit to be filed "before any attachment shall issue in any of the foregoing cases." Section 1642 states the requirements of the affidavit when the debt is actually due; section 1643, when the debt is not actually due; section 1644, against executors and administrators; section 1645 reads as follows: "Attachment in aid of foreclosure. In cases of attachments in aid of foreclosure of mortgages on personal property such affidavit shall describe specifically the property upon which the mortgage exists and shall state that a bill has been filed to foreclose said mortgage, the amount of the debt or demand secured by such mortgage, that the same is actually due, and that affiant has reason to believe in the existence of one or more of the special grounds enumerated in section 1640. The original mortgage or a certified copy thereof, shall be attached to the affidavit." Section 1646 requires a bond on behalf of plaintiff in attachment; section 1647 prescribes the effect upon debts not due of the existence of grounds assigned for attachment; section 1648, relating to the form of the writ, provides in subdivision 1 for the form of such writ generally and by subdivision 2

as follows: "In aid of suits to foreclose. In suits to foreclose mortgages the writ shall describe the property and command the officer to take and hold such property or so much thereof as can be found sufficient to satisfy the debt to be foreclosed." Section 1649 provides that the writ shall be returnable when fully executed or when the officer shall be convinced that no property can be found, and that if property be seized under the writ it shall be returned when the property seized shall have finally passed from the lien of the writ and the control of the officer. Section 1650 makes provision for cases where the property is removed from the county, pending levy of the writ and where property to be attached is situated in a county other than the one in which suit is brought. Section 1651 prescribes the effect of the levy of the writ upon real and personal property. Section 1652 provides for restoring attached property to defendant or some person for him upon giving bond conditioned for the forthcoming of such property, and to abide the final order of the court. Section 1653 is as follows: "Upon bond to pay the debt. Or it may be restored to the defendant (or in case of foreclosure of mortgage, to any person who shall make affidavit that he is the owner of the equity of redemption), on his entering into bond with two good and sufficient sureties to be approved by the officer, conditioned for the payment to the plaintiff in attachment of the debt or demand and all costs of suit, when the same shall be adjudicated to be payable to such plaintiff." Section 1654 provides that if the property be not subject to attachment it may be retaken by defendant by a replevin proceeding. Section 1655, that all personal property levied on by attachment, unless it be restored to defendant or some person for him as provided in sections 1652 to 1655 or be claimed by a third

person as provided by section 1665, shall remain in custody of the officer until disposed of according to law; but that when the property attached shall be of a perishable nature or liable to great deterioration in value or the costs of keeping same shall be greatly disproportionate to the value thereof, the officer who issued the writ may in vacation or term time grant an order for the sale of such property after such notice as to him shall seem expedient, the proceeds to be paid into court and abide the judgment thereof. Section 1656 has already been quoted. Subsequent sections prescribe the effect which a dissolution of the attachment shall have upon a suit begun by attachment, and upon writs of garnishment issued in the attachment suit, require notice of the institution of suits by attachment to be personally served or published in cases commenced by attachment where property has been attached and not retaken by defendant, regulate the filing of the declaration, entry of defendant's appearance and subsequent proceedings, the entry of defaults and final judgments, authorize amendments of pleadings and proceedings in attachment, and regulate the entry of judgments against defendants and sureties upon forthcoming bonds and bonds to pay the debt. Sections 1656-1664. Section 1665 provides that if any attachment shall be levied upon property claimed by any person, other than defendant in attachment, such person may at his option replevy the same, or interpose a claim in the manner provided in case of execution.

Owing to the manner in which all the statutes relating to general attachments are thus compiled, consolidated and enacted as law, some confusion arises as to the precise nature and exact status of attachments in aid of foreclosure. Those sections specifically relating to this class of attachments (§§1640 and 1645) purport

to have been compiled from section 6, act of December 11, 1824, entitled "An act to regulate the foreclosure of mortgages by the courts of common law of this territory, and for other purposes." This act provided a special method of foreclosing mortgages of real and personal property in courts of common law, but because of the anomalous character of the proceeding and the crude provisions of the statute, the courts experienced great difficulty in enforcing it, and under the construction placed upon it by this court in Manley v. Union Bank, 1 Fla. 160, Wilson v. Hayward, 2 Fla. 27 and Daniels v. Henderson, 5 Fla. 452, the remedy afforded was applicable to only a limited number of cases, in consequence of which the statute gradually fell into disuse, and at the time of the adoption of the Revised Statutes was practically obsolete. This statutory remedy, except certain features of the attachment provisions, was not only not retained in the Revised Statutes, but a provision was therein inserted as section 1987 requiring that "all mortgages shall be foreclosed in chancery."

By section 6 of the act of 1824 it was provided that upon application of any person entitled to the foreclosure of a mortgage upon personal property remaining in possession of the mortgagor for an attachment against the property mortgaged, it shall be the duty of the judge of the court to which application for the foreclosure of the mortgage shall be made, to direct the issuing of a writ of attachment by the clerk directed to the executive officer of the court, commanding him to attach, levy upon and take into possession and custody the mortgaged property or so much thereof as will be sufficient to satisfy the debt or demand of petitioner and the costs and charges of the proceedings, and that the officer execute the writ without delay and retain the

attached property in his custody until the judgment of foreclosure be obtained, when he shall dispose of it according to law, or until the further order of the court in the premises, unless replevied in the manner thereinafter pointed out; but that no such writ shall issue unless petitioner in foreclosure or his agent or attorney shall make oath of the sum really and truly due upon the mortgage to be foreclosed; and that he has reason to fear that the property mortgaged will be concealed so that the ordinary process of law can not reach it or that it will be removed beyond the jurisdiction of the court; and shall exhibit to the judge the original mortgage, or any other evidence, or an acknowledgment of the debt or demand secured by it which shall appear to have been given by the mortgagor at the time the application for such writ shall be made; and that the demand of said attachment if made at the time of filing the petition for foreclosure must be contained in the petition; but that the attachment may be applied for by petition and obtained on compliance with aforesaid requisitions at any time before the judgment of foreclosure. No bond was required to be given by the applicant for such attachment, nor were there any provisions authorizing a dissolution of an attachment improperly issued, but by the seventh section the mortgagor, or any person having an interest in the equity of redemption of any property levied on under such attachment, was authorized to replevy same by giving bond with two sureties in a sum sufficient to cover the amount of the debt sworn to be due upon the mortgage, payable to the officer, conditioned to return to him or his successor said property whenever the mortgage of it shall be foreclosed by the judgment of the court, or to pay such sum of money as shall by said judgment be adjudged to be due the petitioner for fore-

closure and all the costs and charges of the proceedings whenever same shall be demanded; which bond was to have the force and effect of a judgment, but no replevy was allowed but upon payment of all costs of issuing the attachment and of the proceedings consequent thereon. It is perfectly clear that the writ in aid of foreclosure authorized by this statute was a writ at law issued by the court of law in the identical proceeding in which the mortgage was being foreclosed, as process to bring the mortgaged property within the control of the court so foreclosing it. The attachment was not an independent proceeding at law to aid foreclosure in another suit, but was when issued essentially a part of the foreclosure proceedings. The writ in aid of foreclosure is continued in force by the Revised Statutes, but as those statutes abrogated all remedies for foreclosure at law and provided for the foreclosure of all mortgages in chancery, the attachment so continued in force became a statutory chancery writ to be issued in suits of foreclosure in chancery, and it is the writ of, returnable to, and under the control of, the chancery court foreclosing the mortgage. While in the Revised Statutes the statutes authorizing and regulating this writ are placed among those authorizing and regulating general attachments at law, it can not be assumed that the legislature intended to continue this writ in its legal aspect as there are no foreclosures at law for it to aid as formerly. Nor can it be assumed that the legislature intended to create a new writ to be issued by a law court in aid of a foreclosure in equity, and subject it to the statutory provisions for dissolution by the law court upon traverse of the debt claimed, for if so, and the law court can require pleadings and try with a jury the question of indebtedness which goes to the merits of the controversy in the foreclosure suit, it can thereby with-

draw from the court of equity its authority to adjudicate the merits of the foreclosure suit, and instead of aiding that court to foreclose the mortgage it would exercise a jurisdiction properly belonging to that court and bring about conflicts between the two courts not easy to reconcile and not contemplated by the statutes. Other consequences would flow from regarding the writ in this light, as for instance, claims might be interposed to the property and the question of superiority of such claims adjudicated between the claimant and the mortgagee in the law court, thereby withdrawing from the court of equity these questions which rightfully belong to it. Nor do we think the attachment as an equitable writ is subject to dissolution under the provisions of section 1656, Revised Statutes. This section, as already stated, purports to have been compiled from section 5, act of February 15, 1834, with some additions and amendments, and it is certain that prior to the adoption of the Revised Statutes the acts referred to did not apply to proceedings in equity or embrace attachments in aid of foreclosures at law, but applied only to general attachments at law. This section as it reads in the Revised Statutes does not in terms purport to embrace attachments in aid of foreclosure, although its language is perhaps broad enough to authorize a construction including them. But such a construction would effect such an important and unprecedented change in equity jurisdiction and practice as to render it certain that the legislature did not intend that section to apply to such writs. According to the constitution of courts of equity, all questions of fact are decided by the chancellor without the aid of a jury, except in those cases where according to equity practice issues in chancery may be submitted to a jury, and in those cases the chancellor is not bound by their verdict to the same extent as judges

Harold Weston v. Calhoun Jones.—Opinion of Court.

of courts of law are bound by verdicts in common law cases. The amount of the debt secured by, or whether anything is due upon, the mortgage, where the foreclosure is being had in equity, is a question of fact to be decided by the chancellor, unless a trial of that question by a jury be directed according to chancery practice. The section referred to, if applicable to attachments issued in foreclosure cases, would make it the duty of the chancellor to order a jury for the trial of the issue raised by a traverse of the debt, upon the simple demand of either party, and thereby divest the chancellor of his power to try and decide the question without the aid of a jury according to the usual and long established practice of that court. While it may be competent for the legislature to do this, the legislative will, to that effect, must be clearly expressed and the legislative intent clearly manifest. The language of the section under consideration is more applicable to proceedings in courts of law than to those in courts of chancery, and as the statutes from which it was compiled never applied to attachments in aid of foreclosure, or to proceedings in equity, we think it has no application to equitable attachments in aid of foreclosure. The court of equity from which the attachment issues has full control over it, and has power to discharge or dissolve it if improperly issued, to the same extent as it has power over other equitable writs improvidently issued, but the proceedings for such discharge must be taken under the rules of chancery practice, and not under statutory provisions relating only to general attachments at law.

The judgment dissolving the attachment is reversed.