602 So.2d 1278 (1992)
George MYLES, Petitioner,
v.
STATE of Florida, Respondent.
No. 78308.
Supreme Court of Florida.
July 9, 1992.
Rehearing Denied September 9, 1992.
*1279 Bennett H. Brummer, Public Defender and Howard K. Blumberg, Asst. Public Defender, Eleventh Judicial Circuit, Miami, for petitioner.
Robert A. Butterworth, Atty. Gen. and Anita J. Gay, Asst. Atty. Gen., Miami, for respondent.
KOGAN, Judge.
We have for review Myles v. State, 582 So.2d 71 (Fla. 3d DCA 1991), based on express and direct conflict with D.A.D. v. State, 566 So.2d 257 (Fla. 5th DCA 1990) (en banc). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
George Myles was charged with six counts of sexual battery upon a child less than twelve years of age. At the subsequent jury trial, the court granted Myles the right to act as co-counsel, and also allowed one of the child-victims to testify via closed-circuit television from the judge's chambers. This last ruling was made pursuant to section 92.54(4), Florida Statutes (1987), which provides:
During the child's testimony by closed circuit television, the court may require the defendant to view the testimony from the courtroom. In such a case, the court shall permit the defendant to observe and hear the testimony of the child, but shall ensure that the child cannot hear or see the defendant. The judge and defendant and the persons in the room where *1280 the child is testifying may communicate by any appropriate electronic method.
(Emphasis added.) Myles remained in the courtroom with the jury and a bailiff, while the attorneys and judge were present with the child in chambers.
Initially, the trial court agreed to let Myles communicate directly with counsel through a sensitive microphone that would connect with a headset worn by the defense attorney. Before the relevant times, however, the trial court rescinded permission for this arrangement and ruled that Myles would be required to communicate with counsel by oral messages delivered to chambers by the bailiff. Defense counsel asked the court to reconsider, but the trial court determined that this "oral relay" system was proper and sufficient. On appeal, the Third District affirmed and specifically held that the statute quoted above permitted but did not require electronic communications between defendant and defense counsel. Myles, 582 So.2d at 73.
The Florida Constitution expressly provides that criminal defendants have a right to assistance of counsel. Art. I, § 16, Fla. Const. Self-evidently, assistance of counsel cannot be rendered illusory or ineffective by a trial court's rulings. The state cannot employ procedural devices that convert the right to counsel into a meaningless and empty pledge. While there are many facets to the right to assistance of counsel, there can be no doubt that a core element is ready access to and communication with counsel during trial. As we recently recognized in Gore v. State, 599 So.2d 978, 985 (Fla. 1992), "it is crucial for a defendant to be able to consult with his attorney at trial in order to aid ... in conducting the examination of a witness."
Any delay in communication between defendant and defense counsel obviously will chill this constitutional right. Communication between defendant and defense counsel must be immediate during the often fast-paced setting of a criminal trial. For example, the defendant may realize that a witness has testified untruthfully. If so, it may be crucial that the defendant talk to counsel so that appropriate actions can be taken immediately to object or impeach or rebut, especially if the untruthful testimony occurs during defense counsel's questioning. The oral relay system used here could not help but cause delays, perhaps crucial ones, and it certainly would have discouraged Myles from communication with his attorney. Because time is of the essence in the trial setting, the oral relay system used here violated Myles' right to assistance of counsel. Art. I, § 16, Fla. Const.
We also find the oral relay system objectionable on another basis. In the relevant proceedings, Myles effectively was required to communicate with counsel orally through a bailiff who is an officer of the state. This clearly infringed upon the privacy of attorney-client communications and could have resulted in a violation of the attorney-client privilege. While the Florida Evidence Code creates a broad statutory attorney-client privilege, § 90.502, Fla. Stat. (1987), some aspects of the attorney-client relationship take on a constitutional dimension in the criminal trial setting. Art. I, §§ 9, 16, Fla. Const. No one seriously would propose, for example, that incarcerated defendants be required to communicate with counsel only indirectly during trial preparation, in an oral relay system in which prison employees are the medium. What occurred here is only little different. At a minimum the state cannot require that a state officer be the medium, in whole or in part, through which communication with counsel about substantive issues occurs.[1]Id.
The conclusions we reach here appear to be in harmony with other courts addressing this same or similar issues. In Maryland v. Craig, 497 U.S. 836, ___, 110 S.Ct. 3157, 3161, 111 L.Ed.2d 666 (1990), the United States Supreme Court approved a Maryland statute that in pertinent part required instantaneous electronic communication between *1281 defendant and defense counsel during closed-circuit testimony. The Fifth District in D.A.D. also has concluded that such communication is essential, D.A.D., 566 So.2d at 258, and to that extent is approved. The Nebraska Supreme Court has held that defendants have a constitutional right to effective communication with counsel in this same context. State v. Warford, 389 N.W.2d 575 (Neb. 1986). New Jersey also appears to be in harmony. State v. Crandall, 231 N.J. Super. 124, 555 A.2d 35 (App.Div. 1989); State v. Sheppard, 197 N.J. Super. 411, 484 A.2d 1330 (Law Div. 1984). No authority has been called to our attention reaching a conclusion contrary to the views of these cases.
We realize, as the court below noted, that the statute in question uses the word "may" in talking about electronic communications. However, it is settled that the word "may" is not always permissive, but may be a word of mandate in an appropriate context. This especially is true where the statute in question is necessary to preserve a constitutional right, as it was here. Weston v. Jones, 41 Fla. 188, 25 So. 888 (1899). Because Myles had a constitutional right to immediate and direct communication with counsel during trial, the statute must be read as mandatory whenever defendants request a means of instantaneous communication with counsel during closed-circuit testimony.[2]
Our disposition of this case requires a new trial. For the instruction of the court below and courts throughout the state, we caution that the findings regarding a necessity for closed-circuit testimony from a child-witness must comply with the United States Supreme Court's pronouncements in Craig. To satisfy Craig, the trial court must: (a) conduct an inquiry in which evidence is received on whether the closed-circuit procedure is necessary to protect the welfare of the particular child[3]; (b) find that the child witness will be traumatized, not by the courtroom generally, but by the presence of the defendant; and (c) find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify. Craig, 497 U.S. at ___, 110 S.Ct. at 3169.
The Craig requirements are not precisely the same as those provided in the child-witness statute. The statute, for example, requires a substantial likelihood of at least moderate emotional or mental harm[4] if the child is required to testify in open court, § 92.54(1), Fla. Stat. (1991), but does not specify that the harm must be caused by the presence of the defendant. Florida courts thus cannot be entirely assured that the federal requirements are met merely by following the statutory standard, and vice versa. To be valid, the trial court's inquiry, findings, and order thus must comply with all the requirements of Craig and the statute.
For the reasons expressed here, the decision below is quashed and this cause is remanded to the trial court for further proceedings consistent with our views here.
It is so ordered.
BARKETT, C.J., and SHAW, GRIMES and HARDING, JJ., concur.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
McDONALD, Judge, dissenting.
While I may not subscribe to the methods employed by the trial judge in reference to the communication available to Myles with his counsel, I would not reverse on that basis.
There is not the slightest indication that Myles was prejudiced by the modified *1282 means of communication employed. He had a full conference with his lawyer between direct and cross-examination. There was no indication he wished to confer with his lawyer at any other time. There is no indication that the truth-seeking process or trial strategy was affected; neither is there any indication that his counsel failed to afford full representation. In other words, the outcome was not affected in any way.
To reverse because we feel that the trial judge failed to adequately follow the statute is placing form over substance. I would affirm Myles' conviction.
OVERTON, J., concurs.
NOTES
[1] Of course, we do not imply that state officers or employees never can deliver messages to counsel on behalf of the defendant, especially where this is what the defendant desires. The state simply cannot require that communication be conducted in this way.
[2] In so concluding, we do not imply that defendants will be compelled to communicate with counsel involuntarily. All that is required is that the means of instantaneous communication be supplied if requested. Defendants need not avail themselves of these facilities if they do not wish to do so, nor is there any constitutional error in the refusal.
[3] Thus, if there is more than one child, the trial court must receive evidence and making appropriate findings as to each one.
[4] Moderate harm would satisfy the "more than de minimis" requirement of Craig.