**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Percy Mark MIGUEL, Defendant–
Appellant.**

**No. 95–10033.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided April 15, 1997.

Terry L. Chandler, Assistant United States Attorney, Tucson, AZ, for plaintiff–appellee.

Javier Chon–Lopez, Assistant Federal Public Defender, Tucson, AZ, for defendant–appellant.

at Trial and Sentencing. D.C. No. CR–93–00609–JMR.

Before: CANBY and FERNANDEZ, Circuit Judges, and JONES,* District Judge.

## OPINION

CANBY, Circuit Judge:

Percy Mark Miguel appeals his jury conviction of two counts of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). Miguel's primary contention is that the district court's procedure for taking the eleven-year-old victim's videotaped deposition violated 18 U.S.C. § 3509 as well as Miguel's Sixth Amendment rights to confrontation of witnesses and assistance of counsel. The fatal defect in the procedure, according to Miguel, is that it failed to afford him the "means of private, contemporaneous communication" with his counsel that the statute guarantees, *id.* at § 3509(b)(2)(B)(iv), and instead allowed him to communicate with counsel only during breaks in the deposition. We agree that the procedure violated the statute but conclude that, in the circumstances of this case, there was no reversible violation of the constitutional rights of confrontation or assistance of counsel. Because Miguel has shown no prejudice resulting from the district court's error, and because we find no merit in Miguel's other arguments,[1] we affirm his conviction.

## BACKGROUND

Miguel was first tried by jury in July 1994 in the United States District Court for the District of Arizona, but the jury could not agree and the district court declared a mistrial. During that first trial, the victim, an eleven-year-old boy, testified via closed circuit television. Miguel received a transcript of this testimony.

After the filing of a superseding indictment and the dismissal of some of the charges, Miguel faced one count of aggravated sexual

---

* The Honorable Robert E. Jones, United States District Judge for the District of Oregon, sitting by designation.

1. Miguel contends that the district court erred by refusing to remove certain prospective jurors for cause, thus forcing Miguel to "waste" his peremptory challenges. He also urges us to find plain error in the district court's failure to give a specific unanimity instruction, and in defining "sexual contact" too broadly in the jury instructions.

abuse in violation of 18 U.S.C. § 2241(c) and two counts of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). His case was set for a second jury trial.

Before the second trial, the district judge ordered, over Miguel's objection, that the victim could give deposition testimony by videotape outside of Miguel's presence under 18 U.S.C. § 3509(b)(2), which governs videotaped depositions of children. The district judge made the requisite findings under § 3509(b)(2)(B)(i)(I) and (II) that the victim would be unable to testify in Miguel's presence because of fear and would suffer emotional trauma from testifying in open court. The district judge then set the terms for the videotaped deposition. Miguel was to watch the deposition from a separate room via closed circuit television. Although defense counsel asserted that the defendant was entitled to electronic communication with counsel during the deposition, the district court rejected that suggestion on the ground that telephone communication during the deposition would intimidate the victim. The court ruled that counsel could consult with Miguel during breaks in the deposition, and Miguel and his counsel could review the deposition to make additional objections before it was shown to the jury at trial.

During the videotaped deposition, both of Miguel's attorneys elected to sit in the courtroom where the victim was giving his deposition, although only one of the attorneys could cross-examine the victim. The victim's testimony at the second deposition was essentially similar to his testimony at the first trial. At the close of direct examination, defense counsel did not request a recess to confer with Miguel, although the court's conditions allowed for such a recess.

The jury viewed the videotaped deposition at trial. The jury acquitted Miguel of aggravated sexual abuse, but convicted him of two counts of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1).

## ANALYSIS

■ We review de novo the district court's interpretation of a statute. See United States v. Ripinsky, 20 F.3d 359 (9th Cir.

1994). We also review de novo whether the district court violated Miguel's Sixth Amendment rights to confrontation of witnesses and the assistance of counsel. See United States v. Jenkins, 884 F.2d 433, 435 (9th Cir.1989); United States v. Lucas, 873 F.2d 1279, 1280 (9th Cir.1989).

### I. Title 18 U.S.C. § 3509

■ Title 18 U.S.C. § 3509 was enacted in the aftermath of Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), in which the Supreme Court upheld Maryland's procedure permitting a child witness alleged to be the victim of abuse to testify by one-way closed-circuit television, out of the presence of the defendant. In rejecting a challenge based on the Confrontation Clause, the Court held that the State's interest in protecting the physical and psychological health of child-abuse victims could, in specific cases, outweigh the defendant's right to confront his or her accusers in person in the courtroom. Id. at 853, 110 S.Ct. at 3167. Such testimony could be permitted, however, only upon a case-specific finding of necessity. Id. at 855, 110 S.Ct. at 3168–69. The Court noted that under the Maryland procedure, the defendant remained "in electronic communication with defense counsel," id. at 842, 110 S.Ct. at 3161, and emphasized that the procedure preserved the adversarial attributes of testimony under oath, opportunity for full cross-examination, and opportunity for the court and jury to observe (albeit by television) the witness as he or she testified. Id. at 857, 110 S.Ct. at 3169–70.

Section 3509 preserves and expands upon the protections that the Court found important in Craig. The statute permits testimony by two-way closed-circuit television, or by videotaped deposition (with the defendant connected by two-way television), upon case-specific findings, inter alia, that the child is unable to testify in open court in the presence of the defendant "because of fear" or because "there is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying." § 3509(b)(1)(B)(i),(ii) and (b)(2)(B)(i)(I),(II). In Miguel's case, the district court made the requisite findings, and

Miguel does not contest them here. The statute also provides, however:

> If the court orders that the defendant be excluded from the deposition room, the court shall order that ... the defendant be provided with a means of private, *contemporaneous communication* with the defendant's attorney *during* the deposition.

18 U.S.C. § 3509(b)(2)(B)(iv) (1995) (emphasis added). Miguel contends, and we agree, that the district court's procedure fell short of this statutory requirement.

■■■ The statute calls for "contemporaneous communication" between the absent defendant and his counsel during the deposition. To ascertain the meaning of that statutory term, we start with the words' ordinary meaning. *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3120–21, 92 L.Ed.2d 483 (1986). The Random House College Dictionary defines "contemporaneous" as "simultaneous, concurrent." THE RANDOM HOUSE COLLEGE DICTIONARY 290 (1st ed. 1980). Webster's Dictionary defines "contemporaneous" as "occurring at the same time." WEBSTER'S INTERNATIONAL DICTIONARY 575 (2d. ed. 1936). The plain meaning of the statute, accordingly, is that the defendant must be able to communicate with his or her attorney instantly during the deposition. Nothing in the legislative history of section 3509 indicates a "clearly expressed legislative intention" to deviate from the plain meaning of its terms. *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Indeed, section 3509 was enacted in the wake of *Craig*, in which the defendant "remain[ed] in electronic communication with defense counsel." *Craig*, 497 U.S. at 842, 110 S.Ct. at 3161. There is accordingly every reason to conclude that a similar type of electronic communication between the defendant and his counsel is required by section 3509.

The district court's arrangements did not provide for contemporaneous communication. Miguel, watching the examination of the victim on the television screen, had no instantaneous way to communicate with his counsel in the courtroom. Indeed, the record does not show that Miguel had any means of requesting a break in the proceeding. The district court assured counsel, not Miguel, that if the need for communication arose, counsel could ask for a recess or take advantage of a regular break in the deposition to confer with Miguel. The statute, however, guarantees that the *defendant*, not counsel, be provided with a means of contemporaneous communication. The district court's arrangement did not suffice.

The district court rejected the defendant's request for a telephone connection on the ground that it would intimidate the child witness to have counsel talking with his client during the deposition. Congress, however, has already struck the balance and determined that the absent defendant is entitled to contemporaneous communication with his attorney during the deposition. Section 3509 represents a careful compromise of highly important rights. When the statute's procedure is invoked, the defendant loses the customary right to confront the witness face-to-face. § 3509(b)(1)(B)(i), (b)(2)(B)(i)(I); *see Craig*, 497 U.S. at 857, 110 S.Ct. at 3169–70. To retain some of the protections inherent in the confrontation of witnesses, Congress has specified that the child witness may testify by two-way closed-circuit television or by deposition taken with a two-way closed-circuit television connection between the deposition proceedings and the defendant. § 3509(b)(1)(A), (b)(2)(B)(iv). Two-way television, in which the testifying child witness is exposed to a televised image of the defendant, sometimes may be intimidating, but this is the procedure specified by Congress and there is no provision for dispensing with it upon a finding of intimidation. The same is true for the defendant's right of contemporaneous communication with his attorney during televised testimony or deposition; Congress has specified the procedure and has included no provision for dispensing with it.

■■■ We conclude, therefore, that Miguel's right to contemporaneous communication under section 3509 was violated. In the particular circumstances of this case, however, the district court's error was harmless under conventional harmless-error analysis. Migu-

el had two attorneys, and only one could cross-examine the child witness. The district court did not prevent the non-examining attorney, who had represented Miguel at his first trial, from accompanying Miguel while he watched the testimony in a separate room. The district court accordingly did not prevent Miguel from conferring with counsel when he wished. In addition, Miguel had been presented with a transcript of the witness's testimony at the first trial, and the witness's testimony in the deposition closely paralleled that earlier testimony. The only potential prejudice to Miguel from the lack of contemporaneous communication would have occurred if Miguel had noted something in the testimony, or had thought of something relevant, about which he desired to communicate with his attorney in the courtroom—either to precipitate a request for a recess or to suggest a particular question or line of questioning. Miguel, however, has not argued to this court or to the district court that he wanted a recess to confer with the examining attorney, or that he had any comment, information or questions for that attorney. The error is therefore harmless because "it is more probable than not that the error did not affect the jury's verdict." *United States v. Erickson,* 75 F.3d 470, 479 (9th Cir.1996). Indeed, even by the constitutional error standard of *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), the error on this showing was harmless beyond a reasonable doubt.

We may not end our consideration of harmless error, however, until we have addressed Miguel's contentions that his Sixth Amendment rights of confrontation and assistance of counsel were also violated. Violation of either of those rights would entail a distinctive approach to harmless error.

## II. Constitutional Right to Confront Witnesses

■ A criminal defendant's right of confrontation extends to depositions. *Christian v. Rhode,* 41 F.3d 461, 465 (9th Cir.1994). It is clear from *Craig,* however, that Miguel's Sixth Amendment right to confront witnesses face-to-face was not infringed by the fact that the child witness testified out of Miguel's physical presence. *See Craig,* 497 U.S. at 857, 110 S.Ct. at 3169–70.[2] *Craig* identifies, however, additional constituent rights guaranteed by the Confrontation Clause: that the witness testify under oath, that he or she be subject to cross-examination, and that the finder of fact be allowed to observe the demeanor of the witness. *Craig,* 497 U.S. at 845–46, 110 S.Ct. at 3163–64. There is no doubt that in Miguel's case the child witness testified under oath and could be observed by the jury, albeit by television as in *Craig.* The only arguable injury to Miguel's confrontation interests would be an impingement upon the right of cross-examination.

Miguel's counsel conducted a thorough cross-examination of the child witness. The court did not prevent counsel from exploring any relevant potential source of impeachment. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (prohibition of all cross-examination regarding possible source of bias violates Confrontation Clause). Thus the purposes of the Confrontation Clause were fulfilled. *See United States v. Sines,* 761 F.2d 1434, 1441 (9th Cir.1985). The only imaginable interference with Miguel's right of cross-examination lies in the possibility that Miguel had a question or thought to relate to counsel that would have led to further questioning to which Miguel would have been entitled. As we have pointed out, however, the record is utterly devoid of any suggestion that Miguel had any question or thought to communicate to his counsel.

■ Even if we assume, without deciding, that the failure to provide Miguel with a contemporaneous means of communication violated his right of cross-examination, the error is harmless by Confrontation Clause standards. When cross-examination on a proper subject is denied, the test for harmless error is "to assume that the damaging potential of the cross-examination [would be]

2. Had there been a violation of Miguel's right to face-to-face confrontation of the child witness, reversal would have been required unless the evidence apart from the testimony of that witness

established harmlessness beyond a reasonable doubt. *Coy v. Iowa,* 487 U.S. 1012, 1021–22, 108 S.Ct. 2798, 2803–04, 101 L.Ed.2d 857 (1988); *see Rhode,* 41 F.3d at 468.

fully realized," and then to determine whether the error was harmless in light of the importance of the witness's testimony in the entire case, "the extent of cross-examination otherwise permitted," and the overall strength of the prosecution's case. *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438.[3] Here, of course, we cannot assume that proffered cross-examination would have been successful, because Miguel has proffered none. Moreover, full cross-examination was otherwise permitted. Miguel clearly fails the *Van Arsdall* harmless error test. We conclude that Miguel has not shown any right to relief by reason of a violation of the Confrontation Clause.

### III. Right to Assistance of Counsel During Trial

 The Sixth Amendment guarantees a defendant the right to confer with counsel during trial. The Supreme Court has held this right to be violated by a trial court's order that a testifying defendant not confer with his attorney during an overnight recess between the defendant's direct and cross-examination. *Geders v. United States,* 425 U.S. 80, 91, 96 S.Ct. 1330, 1336–37, 47 L.Ed.2d 592 (1976).

The district court did not prevent Miguel from conferring with counsel. Miguel had two counsel, only one of whom cross-examined the child witness. Nothing in the district court's directions precluded the nonquestioning counsel, who had represented Miguel in his first trial, from joining Miguel in his separate room during the deposition. The district court also permitted cross-examining counsel to confer with Miguel during breaks or to request recesses for that purpose, although counsel availed herself of neither opportunity. We therefore are faced with nothing on the order of *Geders.*

 In contrast to *Geders,* the Supreme Court permitted a trial court to prohibit a defendant from talking to counsel during a fifteen-minute recess between his direct testimony and cross-examination. *Perry v. Leeke,* 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989). The result in *Perry* depended, however, on the fact that a defendant is not entitled to confer with counsel during the defendant's testimony, *id.* at 281, 109 S.Ct. at 600, a consideration that does not come into play in Miguel's case. In distinguishing the defendant's right to confer with counsel during an overnight recess, the Court stated that in the course of such a long recess the defendant would be likely to confer on "matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain." *Id.* at 284, 109 S.Ct. at 602. Miguel, of course, was not prevented by the district court from conferring with his counsel on all of these matters, even during the deposition, either by having one of his counsel stay with him or by conferring during breaks. The only thing he was prevented from doing was communicating with one of his two counsel while that counsel was questioning the witness.

 Had a second attorney not been available to Miguel, Miguel's inability to communicate contemporaneously with his counsel or to initiate a break in the deposition for purposes of conferring with counsel would have raised extremely serious Sixth Amendment problems. Although defendants' ability to communicate with counsel during trial or depositions lawfully may be restricted because of the defendants' own choice or obstreperous conduct, *see Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970); *Sines,* 761 F.2d at 1434, the ability to communicate with counsel remains "one of the defendant's primary advantages of being present at the trial." *Allen,* 397 U.S. at 344, 90 S.Ct. at 1061. Except when the defendant is testifying, or during brief recesses in that testimony, the defendant enjoys a "right to unrestricted access to his lawyer for advice on a variety of trial-related matters." *Perry,* 488 U.S. at 284, 109 S.Ct.

---

3. In a case where *all* cross-examination of a witness is precluded, we have held that the *Van Arsdall* approach is inappropriate, and that the witness's testimony must be considered stricken. *United States v. Vargas,* 933 F.2d 701, 709 (9th Cir.1991). Where cross-examination is permitted but its scope unduly limited, the *Van Arsdall* approach applies. *United States v. Baker,* 10 F.3d 1374, 1405–06 (9th Cir.1993).

at 602. Miguel cannot be said to have had unrestricted access if he lacked any means of initiating communication with counsel during cross-examination of the government's crucial witness.

Miguel had two lawyers, however, and nothing in the district court's directions would have prevented one of them from remaining in the room with Miguel during the televised testimony. He then would have had unrestricted access to the assistance of counsel. That counsel's assistance in the examination of the witness would not have been without restriction, because that counsel presumably also would not have had a means of contemporaneous communication with co-counsel in the courtroom.[4] Nevertheless, Miguel would be very much better off than if he were alone. He could discuss with counsel anything in the witness's testimony that appeared remarkable to him, or any other matter, and he could request counsel to initiate a break in the proceedings if it appeared advisable. Conferring counsel would then have been free, as Miguel was not, to walk or run down the hall to the courtroom to notify co-counsel to request a recess.

■ The delay inherent in such a procedure is not without its problems. *See Myles v. State,* 602 So.2d 1278, 1280 (Fla.1992) (procedure allowing defendant during televised testimony to communicate with counsel only by oral messages transmitted by bailiff violated Florida's constitutional right of assistance of counsel). Nevertheless, Miguel in that situation would have been able to consult with counsel, and any delay in communication between counsel is more properly viewed as an interference with the right of cross-examination than as a denial of the assistance of counsel. As we have pointed out, the interference with the right of cross-examination in this case was harmless under *Van Arsdall.* In contrast, " '[a]ctual or constructive denial of the assistance of counsel altogether' " is reversible without a showing of prejudice. *Perry,* 488 U.S. at 280, 109 S.Ct. at 599–600 (quoting *Strickland v.*

*Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984)). Because nothing prevented Miguel from the company and advice of counsel, he did not suffer a denial of the assistance of counsel "altogether" so as to require reversal with no showing of prejudice. *Cf. United States v. Lucas,* 873 F.2d 1279, 1280 (9th Cir.1989). As we have already pointed out, Miguel has made no showing of prejudice; the district court's error was harmless beyond a reasonable doubt.

## IV. Remaining Claims

■ Miguel raises additional issues that can be dealt with more briefly. First, he contends that the district court erred in refusing to strike four jurors for cause. Two of the jurors indicated that they had been victims of child molestation; two others had close relatives who had been victims of child molestation. The district court inquired thoroughly of each juror and each ultimately said that he or she could be fair and impartial. "Few aspects of a jury trial are more committed to a district court's discretion than the decision whether to excuse a prospective juror for actual bias." *United States v. Claiborne,* 765 F.2d 784, 800 (9th Cir.1985). We conclude that the district court did not abuse its discretion in declining to excuse the jurors for cause. *Cf. United States v. Payne,* 944 F.2d 1458, 1474–75 (9th Cir.1991) (judge did not abuse discretion in declining to question jurors specifically with regard to experience with sexual abuse).

■ Miguel next contends that the district court erred in failing to instruct the jury on the requirement of specific unanimity. Miguel did not request such an instruction, so we review for plain error. *United States v. Payseno,* 782 F.2d 832, 834 (9th Cir.1986). Miguel's argument is that the evidence and instructions permitted the jury to find that Miguel had committed sexual abuse by touching several different body parts of the victim, and there is no way of knowing whether the jury unanimously agreed on which body parts were touched and with what intent. We have held, however, that a

---

4. The district court ruled that it would have been intimidating to the witness to have the examining attorney talking to his client. It is not clear whether that ruling would also encompass talking to co-counsel who is in the room with Miguel.

defendant is not entitled to a specific unanimity instruction regarding the parts of the body he touched. *United States v. Gavin,* 959 F.2d 788, 792 (9th Cir.1992). There was no plain error.

■ Finally, Miguel argues that the district court's definition for the jury of "sexual contact" was overbroad and would have permitted the jury to find Miguel guilty simply for having spanked the victim. The district court instructed: " 'sexual contact' means intentional touching ... of the genitalia, anus, groin, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." This instruction was proposed by Miguel. The error, if any there was, was invited and we will not review it. *See United States v. Benny,* 786 F.2d 1410, 1416 (9th Cir.1986).

### V. Conclusion

The district court's error in failing to afford Miguel the means of contemporaneous communication with his counsel during the deposition of the child witness, as required by 18 U.S.C. § 3509, was harmless. We also conclude that there was no violation of Miguel's right to assistance of counsel, and that, if there was any violation of the cross-examination component of his right of confrontation, that error as well was harmless. Finally, we find no merit in Miguel's arguments that the district court erred in failing to excuse jurors for cause, and that the district court committed reversible error in instructing the jury. The judgment of the district court is therefore affirmed.

**AFFIRMED.**