FERNANDEZ, Circuit Judge,
dissenting:
I respectfully dissent because even if there was a violation of the confrontation clause, a question on which I do not opine, habeas corpus relief cannot issue unless that constitutional violation had a “ ‘substantial and injurious effect or influence in determining the jury’s verdict.’ ” Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993). Otherwise, the error was harmless. Id. In making a determination, I will apply the harmless error considerations that have been delineated by the Supreme Court for confrontation clause purposes. See Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); United States v. Miguel, 111 F.3d 666, 671-72 (9th Cir.1997). I do so because this is not a case where all cross-examination of the witness was precluded;[1] although cross-examination was limited in one respect, it was otherwise permitted.[2] Thus, I will assume that “the damaging potential of the cross-examination [was] fully realized” and then go on to determine whether I “might nonetheless say that the error was harmless.... ” Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438. That “depends upon a host of factors.... ” Id. As the Supreme Court pointed out:
*1041 These factors include the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.
Id. In this case, I am satisfied that the error was harmless.
Ortiz’s wife, Miriam, was the witness. She presented herself in apparently battered condition at a police station the day after Ortiz allegedly assaulted her, and sought an order protecting herself and her family from Ortiz and his threats. Thereafter, however, she indicated that she just wanted to lead a normal life with her husband and child. At trial, Miriam testified that Ortiz had hit her and lacked her, but she had many claimed memory failures about the incident and made various statements in which she attempted to soften the effect of that testimony. She even seemed to take some of the blame upon herself. Moreover, she suggested that other witnesses were incorrect, or that she could not recall what she told them. All in all, it was clear that she was a reluctant witness, who wanted to protect Ortiz despite his behavior. The jurors could readily perceive that.
The jury also heard from Gerardo Gonzalez, the man whose phone call apparently put Ortiz into a rage. When Gonzalez called, Miriam began crying and Ortiz came on the line, accused Gonzalez of having an affair with Miriam, and threatened to assault him. After that call, he hurled similar accusations at her. The assaults upon Miriam took place right after that. Officer Fuller testified to what Miriam had told him, and to what he saw and photographed (the photographs were shown to the jury). In addition, the jury was informed that Ortiz had a prior conviction for spousal abuse. Ortiz, himself, did not testify.
Ortiz was not precluded from cross-examining Miriam about her changing stories or on any other point other than her claim that she felt threatened with a perjury prosecution if she testified that she had not really been assaulted by Ortiz. (Whether she was actually threatened and whether she would have recanted is not directly before us.)
In light of what the jury did hear, that is, the evidence given by the independent witness regarding the anger of and threats by Ortiz, a prior batterer, and the condition and statements of Miriam when she appeared at the police station with her family, including her desire for a restraining order, it is highly unlikely that the jury would have been much moved if she had been subjected to the further cross-examination propounded by Ortiz.[3] In fact, the evidence that she had been battered by Ortiz was “strong” [4]; it is doubtful that the jury’s decision would have been “much more difficult”[5] if it had heard a different story from her when she was on the witness stand. In short, giving the proposed cross-examination evidence its full damaging potential, in my opinion any error was harmless.
Thus, I respectfully dissent.

. See Miguel, 111 F.3d at 672 n. 3.

. See United States v. Schoneberg, 396 F.3d 1036, 1044 (9th Cir.2005); Miguel, 111 F.3d at 672 n. 3.

.While Miriam’s testimony had importance, it was well corroborated on material points and cross-examination was not otherwise restricted.

. United States v. Larson, 495 F.3d 1094, 1108 (9th Cir.2007) (en banc).

. Slovik v. Yates, 556 F.3d 747, 756 (9th Cir.2009).