COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Frank
Argued by videoconference

PUBLISHED

BRIAN WESLY RUFF

OPINION BY
v.        Record No. 0694-20-2        JUDGE CLIFFORD L. ATHEY, JR.
JULY 27, 2021

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HANOVER COUNTY
Patricia Kelly, Judge

Stephen A. Mutnick (Winslow, McCurry & MacCormac, PLLC, on
briefs), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Brian Wesly Ruff ("Ruff") appeals his convictions of rape and aggravated malicious wounding of his then-seven-year-old daughter, in violation of Code §§ 18.2-61, 18.2-51.2. Ruff contends that the trial court failed to provide him with contemporaneous communication with his attorney during the closed-circuit testimony of his daughter. Finding no error, we affirm Ruff's convictions.

BACKGROUND

We recite the facts of the instant case only to the extent necessary to address Ruff's argument on appeal. Ruff's daughter, G.R., alleged that her father had sexually abused her in 2017. Shortly after her disclosure, G.R. was interviewed by law enforcement and admitted to a hospital due to self-harming behaviors.

During a preliminary hearing on March 1, 2018, G.R. was unable to complete her testimony due to becoming overwhelmed with emotions. During her attempted testimony, Ruff said in open court "I love you [G.R.]." At this point, the hearing was stopped and G.R. left the room in tears.

The trial court heard argument on the Commonwealth's motion to have G.R.'s testimony taken using closed-circuit television pursuant to Code § 18.2-67.9 on November 4, 2019. Patricia Macaluso, G.R.'s counselor, was qualified as an expert by the trial court as a mental health professional. Macaluso testified that G.R. was diagnosed with depression and post-traumatic stress disorder ("PTSD"). Macaluso was also present in the courtroom on the day of the preliminary hearing and witnessed G.R.'s reaction to Ruff. Macaluso testified that G.R. would be unable to testify in Ruff's presence as her progress would decline and she would be more likely to harm herself or attempt suicide if she was required to testify in Ruff's presence.

Linda Coulson was also qualified as an expert in licensed clinical social work. Coulson also counseled G.R. and diagnosed her with depression, anxiety, and PTSD. Coulson testified that G.R. told her that while she wanted to proceed with the court process, she was terrified of being in the same room as Ruff. Coulson believed that if G.R. was forced to testify in front of Ruff, she would be unable to control her emotions and the trauma would exacerbate self-harming behaviors.

Ruff argued that Code § 18.2-67.9 was unconstitutional. The trial court subsequently granted the Commonwealth's motion to take G.R.'s testimony via closed-circuit television, finding that it was necessary to protect G.R.'s welfare and that any testimony with Ruff present was likely to cause severe mental health problems for G.R.

Prior to G.R.'s testimony at trial, Ruff renewed his constitutional objections to the use of closed-circuit testimony. Additionally, Ruff argued that the specific closed-circuit equipment did not provide contemporaneous communication between Ruff and his counsel. G.R. was in an anteroom with the Commonwealth, Ruff's counsel, and a police officer who operated the

closed-circuit system. Ruff was able to view the testimony over the closed-circuit equipment and was provided with a direct telephone line connected to a telephone in the anteroom so that he could confer with his counsel during any examination or cross-examination of G.R. In discussing the closed-circuit equipment, the trial court and Ruff had the following discussion:

> [DEFENSE COUNSEL]: [N]ow that I have seen the equipment and how it actually works, I know the Court's doing the best that it can with the technology that we have, but the statute requires that the defendant shall be provided with a means of private contemporaneous communication with his attorney. We have had several discussions about how the fact that if he picks up this phone and wants to talk with me, everybody in this courtroom is going to hear what he's going to say and so I--

> [COURT]: So, he just needs to pick up the phone when the phone starts ringing. He doesn't need to say anything, if he picks up the phone, I'm going to say this is the situation.

> [DEFENSE COUNSEL]: I'm just going to object that this is not contemporaneous, if he has to wait for me to come around, we have to clear the courtroom, that's not contemporaneous, it can't be done at breaks. Any rhythm or flow I may have in cross-examination or any objection or anything that he wants to bring up to me during the testimony . . . [.]

> [COURT]: Right which would be the same if you were standing there and he was trying to talk to you in the middle of asking a question. He would either have to wait or you would have to wait. [T]here's no way that you can be asking a question and listening at the same time. So, even if you're in the same room with him and he's talking to you, you're either going to say write it down and I'll get back to it, or you're going to stop questioning and turn and address him, because you cannot do both, even if you're in here.

> [DEFENSE COUNSEL]: I understand judge.

Ruff communicated with his counsel twice during G.R.'s testimony in a private room. Once before cross-examination of the witness and once after his counsel indicated that he had no further questions for G.R. The trial court then asked Ruff if he wanted to consult with his counsel again,

and Ruff stated that he did. After consulting with counsel a second time, the trial court permitted counsel for Ruff to ask G.R. several more questions.

After hearing all the evidence, the jury found Ruff guilty of rape and aggravated malicious wounding. The trial court imposed the jury's recommended sentence of life imprisonment on both charges. This appeal followed.

ANALYSIS

Ruff contends that the equipment utilized by the trial court did not provide him with the ability to contemporaneously communicate with his counsel during the closed-circuit testimony.[1] Specifically Ruff argues that the communication would not be instantaneous, nor would it be private because Ruff would be speaking into the telephone in the presence of the jury.

"Under well-established principles, an issue of statutory interpretation is a pure question of law which we review *de novo*." McGinnis v. Commonwealth, 68 Va. App. 262, 267 (2017) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104 (2007)). In interpreting statutes, we "apply the plain meaning of the language appearing in the statute unless it is ambiguous or applying the plain language leads to an absurd result." Commonwealth v. Amos, 287 Va. 301, 305-06 (2014).

Code § 18.2-67.9(D) provides, in pertinent part:

> The child's testimony shall be transmitted by closed-circuit television into the courtroom for the defendant, jury, judge, and public to view. The defendant shall be provided with a means of private, contemporaneous communication with his attorney during the testimony.

---

[1] To the extent that Ruff claims his Sixth Amendment rights were violated, we do not address this argument as it is not encompassed in the assignment of error. Further, Ruff's constitutional arguments were denied in his petition for appeal. See Simmons v. Commonwealth, 63 Va. App. 69, 75 n.4 (2014) (holding that argument on appeal was not "subject of the assignment of error," and thus was not reviewable).

While we have addressed the constitutionality of Code § 18.2-67.9, <u>see</u> <u>Castillo v. Commonwealth</u>, 70 Va. App. 394, 452 (2019), the issue of "contemporaneous communication" in the context of the statute is a question of first impression.

We defined "contemporaneous" in the context of the business records exception to hearsay in <u>Jones v. Commonwealth</u>, 38 Va. App. 231, 238 (2002). There we defined "contemporaneous" as "existing or occurring during the same time." <u>Id.</u> (quoting <u>Webster's Third New International Dictionary</u> 491 (1993)). Thus, the plain meaning of the statute requires that the defendant must be able to communicate during the same time. <u>See</u> <u>Maryland v. Craig</u>, 497 U.S. 836, 842 (1990) (noting that the criminal defendant "remain[ed] in electronic communication with defense counsel").

Here, the trial court provided Ruff with a telephone on which he could press any two numbers, which would cause the phone to ring in the anteroom so that he could communicate with his counsel. Ruff contends that this was not instantaneous enough to meet the requirements of the statute. We disagree.

Taking Ruff's contentions to their logical conclusion would mean that Ruff should be afforded the opportunity to speak to his attorney at the same moment his attorney is conducting cross-examination. However, if testimony were being adduced in the courtroom with Ruff sitting at the defendant's table, he would not be able to speak to his attorney while counsel was asking questions of the witness. As the trial court noted, "there's no way that you can be asking a question and listening at the same time." Practically speaking, instantaneous communication during cross-examination is not possible in a courtroom and is certainly not required in order to meet the requirement of contemporaneous communication.

Ruff relies on <u>United States v. Miguel</u>, 111 F.3d 666 (9th Cir. 1997),[2] for the proposition that a defendant should be able to communicate with counsel immediately; however, he misreads the holding in that case. In <u>Miguel</u>, defense counsel asserted that the defendant was entitled to electronic communication with counsel during the deposition. <u>Miguel</u>, 111 F.3d at 669. The district court rejected counsel's suggestion because the court feared that telephone communication during the deposition would intimidate the child victim. <u>Id.</u> On appeal, the court found that the district court erred by denying Miguel the use of a telephone to communicate with defense counsel during the deposition. <u>Id.</u> at 670.

Here, Ruff was provided with a telephone so that he could communicate nearly instantaneously with counsel. Ruff only had to pick up the telephone receiver and press any two buttons on the phone to speak with his counsel in the anteroom.[3] Therefore, we hold that providing a criminal defendant with a telephone to communicate with defense counsel meets the statutory requirement of Code § 18.2-67.9 that a defendant be provided with a means of "contemporaneous communication."

CONCLUSION

The trial court, providing Ruff with a telephone to communicate with defense counsel during the closed-circuit testimony of a child victim met the statutory requirement of Code

---

[2] Ruff also relies on <u>Myles v. State</u>, 602 So.2d 1278, 1280 (Fla. 1992), and <u>Price v. Commonwealth</u>, 31 S.W.3d 885, 894 (Ky. 2000). However, in both cases the criminal defendant was denied any communication with counsel as opposed to a method of contemporaneous communication.

[3] Ruff also contends that meeting with counsel during breaks in a private room does not meet the requirement of contemporaneous communication. However, it was Ruff who asked the trial court to be able to meet in between questioning. Additionally, after Ruff's counsel had rested, the trial court provided Ruff with an opportunity to meet with defense counsel in a private room which led to another series of questions on cross-examination. It is well-settled that "[n]o litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate – to invite error . . . and then to take advantage of the situation created by his own wrong." <u>Fisher v. Commonwealth</u>, 236 Va. 403, 417 (1998).

- 6 -

§ 18.2-67.9 that a defendant be provided with a means of "contemporaneous communication."

Accordingly, we affirm.

_Affirmed._
