**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Louise Han PEREZ; Joseph Eclavea**
**Perez; John Velasco Cruz,**
**Defendants–Appellants.**

**Nos. 94–10313, 94–10314 and 94–10400.***

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 23, 1996.

Decided June 20, 1997.

---

* Counsel for defendant Louise Han Perez, No. 94–10313, did not participate in the en banc hearing.

Robert E. Harstock, Assistant Federal Public Defender, Mongmong, Guam, for defendant-appellant, Joseph E. Perez.

Howard Trapp, Howard Trapp Incorporated, Agana, Guam, for Defendant-Appellant, John V. Cruz.

David J. Highsmith, Highsmith & O'Mallen, Agana, Guam, for Defendant-Appellant, Louise Han Perez.

Karon V. Johnson, Assistant United States Attorney, Agana, Guam, for the Plaintiff-Appellee.

Before: HUG, Chief Judge, BROWNING, FLETCHER, PREGERSON, JOHN T. NOONAN, THOMPSON, LEAVY, TROTT, T.G. NELSON, KLEINFELD and TASHIMA, Circuit Judges.

Opinion by Judge TASHIMA; Concurrence by Judge KLEINFELD.

TASHIMA, Circuit Judge:

The issue we resolve today is the viability of this circuit's "invited error" doctrine following the Supreme Court's decision in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The three-judge panel ("panel") suggested that *Olano* overruled that doctrine, at least in the context of jury instructions specifically requested by the defendant. *United States v. Perez,* 67 F.3d 1371, 1385 n. 13 (9th Cir.1995). On en banc review, we conclude that *Olano* limits our application of the invited error doctrine to those rights deemed waived, as opposed to merely forfeited, that is, "known right[s]" that have been "intentional[ly] relinquish[ed] or abandon[ed]." *See Olano,* 507 U.S. at 733, 113 S.Ct. at 1777 (defining waiver).

In the case before us, we conclude that defendants-appellants Joseph E. Perez ("Perez")[1] and John V. Cruz ("Cruz") did not waive the proper jury instructions under 18 U.S.C. § 924(c)(1), using or carrying a firearm in relation to drug trafficking. Even though both defendants submitted flawed instructions, neither they, the prosecution, nor the court apparently was aware of the correct law. Given these circumstances, the error cannot be deemed waived, but merely forfeited. We therefore undertake a plain error review. However, because we conclude that the error is not one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," *id.* at 736, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391,

---

**1.** The panel opinion only addresses the flawed jury instructions under 18 U.S.C. § 924(c)(1) in its discussion of Cruz's arguments on appeal. Perez filed a petition for rehearing, indicating that his conviction under § 924(c)(1) suffered from the same defect as Cruz's conviction. Perez also pointed out that he had joined in all of Cruz's arguments on appeal. Because we took this case en banc, the panel did not rule on Perez's petition for rehearing. Given, however, that the issues are identical, we address Perez's arguments on the merits together with those of Cruz.

392, 80 L.Ed. 555 (1936)), we do not "notice" the error under Federal Rule of Criminal Procedure 52(b). We therefore withdraw that portion of the original panel's opinion concerning the flawed jury instructions under § 924(c)(1). *Perez,* 67 F.3d at 1384–86.[2]

## I

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of a drug trafficking conspiracy in Guam. Defendants Cruz and Perez, along with others, were charged, and in some instances convicted, of various conspiracy, drug, and firearm counts. The following recitation of facts is pertinent to the convictions of Cruz and Perez under 18 U.S.C. § 924(c)(1), using or carrying a firearm in relation to drug trafficking.[3]

In 1992, Perez sold cocaine four times to a police informant. Guam police officers, in cooperation with federal agents, then put his residence under surveillance. The surveillance revealed that Perez exchanged firearms and other stolen goods for heroin from Cruz. According to a police informant, Perez discovered he was under surveillance, and cached the bulk of the contraband at Cruz's residence. In December, 1993, the police obtained search warrants for the residences of both Cruz and Perez, and executed those warrants on December 28.

When officers entered Perez's residence, he was seated on a couch with his girlfriend Matilda Paulino. As Perez stood up, officers saw a Caspian Arms .38 caliber pistol on the couch, which had been under Perez's right leg. Police also found a .22 caliber pistol in Paulino's purse, and a semi-automatic pistol in a bag in a hall.

In executing the search warrant of Cruz's residence, undercover police knocked on his door and made an unsuccessful effort to draw Cruz out of his home. The officers then decided their cover had been blown, and so barged into the residence yelling "police officers!" Officers quickly discovered Cruz underneath the kitchen table, chambering a round into a loaded Glock–19 9 mm. pistol with a special laser sight. After his arrest, police also discovered a loaded SWD M–11 9 mm. pistol and a Norinko SKS semi-automatic rifle in the master bedroom, and an Inter TEC–9 pistol with silencer in the living room.

Perez and Cruz, along with a third co-defendant, were tried together.[4] At trial, the prosecution introduced evidence connecting the guns found at the residences of Cruz and Perez to the respective defendants. Various witnesses also testified that Cruz and Perez sold heroin to friends while carrying a weapon. The prosecution adduced expert testimony that narcotic traffickers use weapons for protection and intimidation. The jury convicted both Cruz and Perez of distributing heroin in violation of 21 U.S.C. § 841(a)(1), possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(2), being felons in possession of firearms in violation of 18 U.S.C. § 922(g)(1), and using or carrying firearms in relation to drug trafficking in violation of 18 U.S.C. § 924(c)(1).[5] The indictment charged that Perez and Cruz possessed heroin with intent to distribute up to and including December 28, 1993. Thus, defendants were in the course of committing a drug trafficking crime on the date they were arrested with the weapons and in the circumstances described above.

## II

## DISCUSSION

■ Defendants contend their convictions under 18 U.S.C. § 924(c)(1) should be over-

---

2. Although we took the entire case en banc, the only issue that concerns us is the jury instructions under 18 U.S.C. § 924(c)(1). *Perez,* 67 F.3d at 1384–86. The rest of the panel opinion is not affected by our en banc review, and is not withdrawn.

3. The original panel opinion contains a more detailed recitation of the facts. *Perez,* 67 F.3d at 1374, 1377–78, 1381–82.

4. Louise Perez, the third co-defendant, was acquitted of conspiracy to use a firearm during drug trafficking, in violation of 18 U.S.C. §§ 371 and 924(c)(1). This opinion therefore does not concern her.

5. The panel affirmed the convictions of Cruz and Perez under 21 U.S.C. §§ 841(a)(1) & (2), and 18 U.S.C. § 922(g). *Perez,* 67 F.3d at 1381, 1386.

turned because the trial court failed to instruct on an essential element of the crime. Section 924(c)(1) provides:

> Whoever, during and *in relation to* any ... drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C. § 924(c)(1) (emphasis added). In *United States v. Mendoza,* 11 F.3d 126 (9th Cir.1993), we held the statute's "in relation to" requirement is an essential element of a § 924(c)(1) offense, which must be submitted to a jury. *Id.* at 128.

Although *Mendoza* was decided several months prior to defendants' trial, the court did not submit the "in relation to" element to the jury.[6] A busy trial court cannot be blamed for this kind of error, particularly when both sides agreed that the flawed instruction, which was taken from the *Manual of Model Criminal Jury Instructions for the Ninth Circuit,* Instruction 819U (1992), should be given. Under these circumstances, we must now consider whether we may review the error and, if so, whether we should grant relief.

## A. The Viability of the Invited Error Doctrine

We have held repeatedly that where the defendant himself proposes allegedly flawed jury instructions, we deny review under the invited error doctrine. *See, e.g., United States v. Butler,* 74 F.3d 916, 918 n. 1 (9th Cir.1996); *United States v. Staufer,* 38 F.3d 1103, 1109 n. 4 (9th Cir.1994); *United States v. Baldwin,* 987 F.2d 1432, 1437 (9th Cir.), *cert. denied,* 508 U.S. 967, 113 S.Ct. 2948, 124 L.Ed.2d 696 (1993); *United States v. Guthrie,* 931 F.2d 564, 567 (9th Cir.1991). The doctrine reflects the policy that invited errors "are less worthy of consideration than those where the defendant merely fails to

object." *Guam v. Alvarez,* 763 F.2d 1036, 1037 (9th Cir.1985). In the past, we have corrected invited errors only in extraordinary circumstances, such as "when the integrity of the judicial process itself would otherwise suffer." *Id.* (quoting *Marshall v. United States,* 409 F.2d 925, 927 (9th Cir. 1969)); *but see, United States v. Freeman,* 6 F.3d 586, 600 (9th Cir.1993) (conducting a plain error review of the omission of an entrapment instruction, even though the defendant had voluntarily withdrawn such an instruction at trial). The government argues that under our invited error doctrine, we may not review the error because Cruz and Perez both proposed the faulty instructions to the court.

By contrast, Cruz and Perez argue that we may review the error under Rule 52(b), which provides:

> Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Fed.R.Crim.P. 52(b). Until now, we have undertaken a plain error review when the defendant merely failed to object to faulty instructions, as opposed to actually proposing or agreeing to faulty instructions. *Baldwin,* 987 F.2d at 1437.

In *Olano,* the Court provides an extensive framework for plain error review. 507 U.S. at 731–37, 113 S.Ct. at 1776–80. *Olano* does not, however, specifically address the concept of invited error. From this omission, the panel concluded that plain error review is appropriate for invited errors:

> *Olano* lays out a framework to be applied to all instances where defendant's counsel has failed to properly preserve error for appeal. *Olano* does not distinguish between errors counsel fails to object to and errors that counsel invites affirmatively. Rule 52(b) does not make this distinction either.
>
> First, the defendant committed [a drug offense]; and
> Second, the defendant knowingly used or carried [a firearm], while committing the crime.

---

**6.** The court gave the following instruction on 18 U.S.C. § 924(c)(1):

In order for the defendant to be found guilty of [section 924(c)(1)], the government must prove each of the following elements beyond a reasonable doubt:

*Perez,* 67 F.3d at 1385 n. 13. Although *Olano* does not directly address so-called "invited error," it certainly addresses the difference between forfeited and waived rights. 507 U.S. at 732–34, 113 S.Ct. at 1776–78. Accordingly, we cannot agree that *Olano* completely overruled our invited error doctrine. Instead, we must reformulate that doctrine to conform to *Olano*'s discussion of waiver and forfeiture.

 Forfeiture is the failure to make a timely assertion of a right, whereas waiver is the "intentional relinquishment or abandonment of a known right." *Olano,* 507 U.S. at 733, 113 S.Ct. at 1777 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Forfeited rights are reviewable for plain error, while waived rights are not. *Id.* "If a legal rule was violated during the District Court proceedings, and if the defendant did not waive the rule, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection." *Id.* at 733–34, 113 S.Ct. at 1777.

 Until now, our invited error doctrine has focused solely on whether the defendant induced or caused the error. *See Baldwin,* 987 F.2d at 1437 (citing *United States v. Montecalvo,* 545 F.2d 684, 685 (9th Cir.1976), and *Guthrie,* 931 F.2d at 567). We now recognize, however, that we must also consider whether the defendant intentionally relinquished or abandoned a known right. *Olano,* 507 U.S. at 733, 113 S.Ct. at 1777. If the defendant has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable.[7]

We do not mean to suggest that a defendant may have jury instructions reviewed for plain error merely by claiming he did not know the instructions were flawed. What we are concerned with is evidence in the record

that the defendant was aware of, *i.e.,* knew of, the relinquished or abandoned right. For example, in *Baldwin,* the defendant was charged with conspiracy to distribute cocaine. 987 F.2d at 1436. The court's proposed instructions left out "overt act" as an element of the crime. *Id.* The government excepted to the instructions because they omitted this requirement. *Id.* at 1437. The defendant's attorney indicated that he did not believe it was necessary to instruct on the overt act requirement. *Id.* This scenario is an example of waiver because the record reflects that the defendant was aware of the omitted element and yet relinquished his right to have it submitted to the jury.[8] *Accord Staufer,* 38 F.3d at 1103, 1109 n. 4 (waiver of error occurred because trial attorney modified model jury instructions to conform to most recent Supreme Court decision); *Guthrie,* 931 F.2d at 567 (refusal to review jury instructions under invited error doctrine, because trial court had offered to give omitted instruction, and defendant's attorney objected). Waiver occurred in each of these cases because the defendant considered the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction.

Here, however, the record reveals that neither defendants, the government, nor the court was aware of *Mendoza*'s requirement that the "in relation to" element be submitted to the jury. 11 F.3d at 128. Although Cruz and Perez did submit erroneous instructions, there is no evidence that they affirmatively acted to relinquish a known right. That is, there is no evidence that Cruz and Perez considered submitting the "in relation to" element to the jury, but then, for some tactical or other reason, rejected the idea. Thus, it cannot be said that Cruz and Perez waived their right to have this

---

**7.** Not all rights are waivable. *Olano,* 507 U.S. at 733, 113 S.Ct. at 1777. "Whether a right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Id.*

In this case, we need not conduct an extended analysis concerning the waivability of jury in-

structions. We have long held that jury instructions may be waived by a defendant's attorney. *See, e.g., Staufer,* 38 F.3d at 1109 n. 4 ("we deem [the jury instruction] issue waived").

**8.** *Baldwin* preceded *United States v. Shabani,* 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994), which overruled Ninth Circuit law that proof of an overt act was an element of a drug conspiracy under 21 U.S.C. § 846.

element submitted to the jury; waiver occurs only when a defendant relinquishes or abandons a "known right." *Olano,* 507 U.S. at 733, 113 S.Ct. at 1777.

To the contrary, the failure to propose the "in relation to" element was forfeited error: error that is not objected to during trial because the defendant is unaware of a right that is being violated. Here, because neither Cruz nor Perez knew of the right to have the omitted element submitted to the jury, we must treat the right as forfeited, as opposed to waived. Accordingly, we review the error under Rule 52(b) for plain error. *See Johnson v. United States,* —— U.S. ——, ——, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718, —— (1997) (forfeited right reviewed for plain error).[9]

### B. Plain Error Review

The Supreme Court mandated a four-part inquiry to determine whether an error may be corrected under Rule 52(b): (1) there must be error; (2) it must be plain; and (3) it must affect substantial rights. *Olano,* 507 U.S. at 732–35, 113 S.Ct. at 1776–78. Even after a reviewing court finds plain error under this three-part rubric, relief remains discretionary under *Olano's* fourth and final requirement. *Id.* at 735–37, 113 S.Ct. at 1778–80. "The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of ju-

dicial proceedings.'" *Id.* at 736, 113 S.Ct. at 1779 (quoting *Atkinson,* 297 U.S. at 160, 56 S.Ct. at 392). Applying this analytical framework to the case at bench, we conclude that, although there was error, and it was plain, it is not the kind of error that should be noticed under *Olano's* final, discretionary prong. Accordingly, we do not grant relief.

### 1. Was There Error?

■ An error occurs when there has been a deviation from a legal rule, unless the rule has been waived. *Olano,* 507 U.S. at 732–33, 113 S.Ct. at 1776–77. Here, the alleged error is the district court's failure to instruct on the "in relation to" element of § 924. Under *Mendoza,* the district court's failure to submit this element to the jury was error. 11 F.3d at 128. Moreover, as discussed in Part II.A, above, we conclude that neither Cruz nor Perez waived the error. Accordingly, there was "error."

### 2. Was the Error Plain?

■ An error is plain when it is "clear" or "obvious" under the law. *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777–78. *Mendoza,* which had been decided several months prior to defendants' trial, clearly and unambiguously required the submission of the "in relation to" element to the jury. 11 F.3d at 128. Accordingly, the error was "plain." *See also Johnson,* —— U.S. at ——, 117 S.Ct. at 1549 (error not clear at time of trial, but

---

**9.** The concurring opinion contends that "our decision today is aberrant" because "[a]ll the other circuits to address invited error doctrine since *Olano* have held that it survives essentially unchanged." The cases the concurrence relies on, however, do not support this proposition. In none of those cases did the court even consider whether *Olano* should inform the way the courts apply the invited error doctrine, let alone "hold" that the invited error doctrine "survives ... unchanged." In fact, none of those cases even considered the issue we decide today-namely, whether the invited error doctrine should apply when a defendant has merely forfeited, rather than waived, a right. For example, *United States v. Griffin,* 84 F.3d 912, 924 (7th Cir.1996), applied the invited error doctrine, but only after explicitly finding that the defendant had waived his right to claim error. *See also United States v. Ross,* 77 F.3d 1525, 1542 (7th Cir.1996) (defendant "voluntarily waived any objection"); *United States v. Mitchell,* 85 F.3d 800, 808 (1st Cir.1996)

(same); *United States v. Balter,* 91 F.3d 427, 434 (3d Cir.1996) (assuming waiver); *United States v. Hardwell,* 80 F.3d 1471, 1487 (10th Cir.1996) (finding waiver); *United States v. Yu–Leung,* 51 F.3d 1116, 1123 (2d Cir.1995) (same).

In *United States v. Tandon,* 111 F.3d 482 (6th Cir.1997), the court applied the invited error doctrine where the trial court gave the instruction sought by the defendant. While it is true that the court there did not expressly find waiver, there is no indication that the defendant was unaware of the right he relinquished. *Id.* at 489. In short, none of these cases considered whether the invited error doctrine should be applied to a case involving forfeiture, rather than waiver. The concurrence's canvass of the other circuits omits *United States v. Nelson,* 102 F.3d 1344 (4th Cir.1996), which supports our position rather than that of the concurrence. There, the court applied plain error review to forfeited error. *Id.* at 1348. Thus, our decision today is not "aberrant."

" 'plain' at time of appellate consideration," may qualify as "plain" error under *Olano* ).

### 3. Did the Error Affect Substantial Rights?

In the context of plain error review, for an error to affect substantial rights, "in most cases it means that the error must have been prejudicial." *Olano*, 507 U.S. at 734, 113 S.Ct. at 1778. "Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)." *Id.* at 735, 113 S.Ct. at 1778. *Olano* contains these cautionary statements (*i.e.*, "in most cases" and "normally") in recognition of the fact that there the Court was dealing with a mere rule violation [10] and not a deprivation of a constitutional right. These statements suggest that there may be some cases, such as those involving the violation of certain constitutional rights, in which prejudice may not have to be shown.

Here, we are dealing with an asserted constitutional violation. Failure to submit an essential element to a jury relieves the prosecution of its obligation to prove every element beyond a reasonable doubt. *Carella v. California*, 491 U.S. 263, 265, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218 (1989) (citing *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970)). Depriving the jury of its fact-finding duty thereby violates a defendant's due process right to have each element found beyond a reasonable doubt. *Id.* Failure to instruct on every element is, therefore, constitutional error. *Id.*

The error is not, however, presumptively prejudicial. *See Roy v. Gomez*, 81 F.3d 863, 866–67 (9th Cir.) (en banc) (concluding that omission of an essential element is not structural error and can be subjected to harmless error review), *overruled on other*

*grounds,* — U.S. ——, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996). "Even though an element of the offense is not specifically mentioned, it remains possible the jury made the necessary finding." *Id.* at 867. Accordingly, we cannot presume that Cruz and Perez were prejudiced by the trial court's error.[11] However, we need not make the difficult determination of whether it was prejudicial, or "whether the phrase 'affecting substantial rights' is always synonymous with 'prejudicial.' " *Olano*, 507 U.S. at 735, 113 S.Ct. at 1778 (citing *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)). Instead, we follow the teaching of *Johnson*:

> But we need not decide that question because, even assuming that the failure to submit [the "in relation to" element] to the jury "affect[ed] substantial rights," it does not meet the final requirement of *Olano*.

— U.S. at ——, 117 S.Ct. at 1550. We, thus, assume that Cruz and Perez's substantial rights were affected, that if *Olano* 's third prong requires a showing of prejudice, their rights were prejudiced, and proceed to *Olano* 's final requirement.

### 4. Does the Error "Seriously Affect the Fairness, Integrity or Public Reputation of Judicial Proceedings?"

In conducting our review of this element, "we consider all circumstances at trial including the strength of the evidence against the defendant." *United States v. Campbell*, 42 F.3d 1199, 1204 (9th Cir.1994), *cert. denied*, 514 U.S. 1091, 115 S.Ct. 1814, 131 L.Ed.2d 738 (1995) (internal quotation omitted). *See Johnson*, — U.S. at ——, 117 S.Ct. at 1550 (reviewing record under *Olano's* fourth prong for strength of evidence in support of element omitted from instructions). The concern, of course, in failing to

---

**10.** The error in *Olano* was the presence of alternate jurors during deliberation, in violation of Federal Rule of Criminal Procedure 24(c). 507 U.S. at 727, 113 S.Ct. at 1774.

**11.** The panel concluded that the omission of an essential element is a structural constitutional error, necessarily affecting "substantial rights." *Perez*, 67 F.3d at 1385–86. It relied on our holding in *United States v. Gaudin* that a court deciding materiality as a matter of law is a

structural constitutional error. 28 F.3d 943, 951 (9th Cir.1994) (en banc), *aff'd*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). However, *Roy*, decided after the original panel opinion, clarified that, while it is structural error for a court to decide an element as a matter of law, it is not structural error for a court merely to omit an element from a jury's consideration. 81 F.3d at 866–67.

submit the "in relation to" element to the jury is that a conviction may be based solely on evidence that a defendant committed a drug offense while merely possessing a firearm. *United States v. Stewart*, 779 F.2d 538, 539 (9th Cir.1985), *overruled on other grounds by Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).[12] Thus, without the element, a jury may convict under § 924(c)(1) even if it finds that the weapons were not intended to facilitate the underlying drug crimes. The record before us, however, does not support that this occurred to either Cruz or Perez.

Police discovered Cruz chambering a round into a weapon under the kitchen table when they entered his home. Cruz was in the course of committing the charged drug trafficking crime, the possession of heroin with the intent to distribute, at that time. Perez had a gun lying under his leg while seated on a couch when police entered his home. Perez, likewise, was in the course of committing the charged drug trafficking crime at that time.

Moreover, police found various guns which were tied to the respective defendants at both defendants' homes. Witnesses testified that the men carried guns while transacting drug deals. Finally, the prosecution offered expert testimony that drug dealers carry guns for protection and intimidation.[13]

■ In short, there is strong and convincing evidence that Cruz and Perez carried and/or used the guns "in relation to" the charged drug transactions. All that is needed to meet this requirement is that "the gun at least must 'facilitat[e], or *ha[ve] the potential for facilitating*,' the drug trafficking offense." *Smith v. United States*, 508 U.S. 223, 238, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993) (quoting *Stewart*, 779 F.2d at 540) (emphasis added). It is therefore extremely unlikely that, if properly instructed, the jury

would not have convicted Cruz and Perez of the § 924(c)(1) charge, *i.e.*, it is highly likely that, on this record, it would have found that the weapons were intended to facilitate, or, at least, had "the potential for facilitating," the on-going drug trafficking crime.

The Court's recent comment in *Johnson* applies, as well, to. the case at bench:

> Indeed, it would be the reversal of a conviction such as this which would have that effect [of "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings"]. "Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." No "miscarriage of justice" will result here if we do not notice the error, and we decline to do so.

—— U.S. at ——, 117 S.Ct. at 1550 (citations omitted). Accordingly, on this record, we conclude, under *Olano*'s final, discretionary prong, that this error does not warrant correction as "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736, 113 S.Ct. at 1779.

## III

## CONCLUSION

Because Cruz and Perez did not waive the right to have the "in relation to" element submitted to the jury, we conclude that we should review the forfeited right under the plain error standard of Rule 52(b). However, after such review, we further conclude that, because the error does not "seriously affect the fairness, integrity or public reputation of judicial proceedings," the error should not be noticed under Rule 52(b). We therefore withdraw that part of the original panel's opinion concerning the jury instruction on using or carrying a firearm in relation to a drug trafficking crime, *Perez*, 67 F.3d at

12. In *United States v. Hernandez*, 80 F.3d 1253, 1257 (9th Cir.1996), we held that *Stewart* had been overruled by *Bailey* to the extent it suggested that "the inert presence of a firearm, without more, is [ ] enough to trigger [the 'use' prong of] § 924(c)(1)" (quoting *Bailey*, —— U.S. at ——, 116 S.Ct. at 508). However, *Stewart* has not been overruled in any other respect. *See United*

*States v. Loaiza–Diaz*, 96 F.3d 1335, 1336 (9th Cir.1996).

13. While we do not suggest that the § 924(c)(1) offense could be based on the evidence summarized in this paragraph alone, it is, nonetheless, strong circumstantial, direct and expert evidence of defendants' *modus operandi*.

1384–86, and affirm the district court with respect to defendants' assignment of error regarding omission of the "in relation to" element from the jury instructions under 18 U.S.C. § 924(c)(1).

Finally, we remand this case to the three-judge panel to determine whether the defendants' convictions under 18 U.S.C. § 924(c)(1) are affected by: (1) *Bailey,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472, an issue the panel did not previously consider; or (2) the district court's failure to submit a special verdict form regarding which firearm, or firearms, defendants used in connection with the drug trafficking offense.

KLEINFELD, Circuit Judge, joined by HUG, Chief Judge, DAVID R. THOMPSON, TROTT, and T.G. NELSON, Circuit Judges, concurring in the judgment.

I concur in the result. But I disagree with the majority's rejection of unreviewability of invited error except where the record shows that counsel knew of the legal entitlement being waived. Traditionally, invited error is unreviewable except in "the most 'exceptional situation'" where reversal is "necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice." *United States v. Schaff,* 948 F.2d 501, 506 (9th Cir.1991). Defense counsel requested the instruction the judge gave, so invited error doctrine would make the error unreviewable whether it was prejudicial or not, and whether defense counsel was aware of it or not. I would treat the jury instruction error in this case as waived.

The majority opinion says that "an error is waived and therefore unreviewable," only if "the defendant has both invited the error, and relinquished a known right." This is impractical, as I explain below. And it is doctrinally mistaken, because it confuses two levels of rights. When defense counsel asks a judge to proceed a certain way, he may not know of some case which would entitle him to demand that the judge proceed in a different way. But he does know that he is giving up his client's right to appeal whatever error might later be identified if the judge proceeds as he requests. Because defense counsel intentionally relinquishes the known right

to appeal error in what he himself requests, invited error is a waiver of a known right. The known right relinquished or abandoned is the right to appeal an error in an instruction, not a known right to a particular instruction.

This case concerns only jury instructions, so perhaps we will distinguish it in future cases of invited error not relating to jury instructions. The context is peculiar, in that the error came from our own form book. Defense counsel requested the instruction in our form book, but a case had come down a few months before trial which held that our form incorrectly omitted the "in relation to" element of the crime under 18 U.S.C. § 924(c)(1). *See United States v. Mendoza,* 11 F.3d 126 (9th Cir.1993). Perhaps we will limit today's decision to invited error in jury instructions based on our own form book, but the opinion does not contain express limiting language. It is possible that we will construe today's opinion broadly, and hold in any future case of any kind of invited error that unless the government can show that the defense knew what error was being made, we will reverse in the same circumstances as for merely forfeited error.

The majority opinion is mistaken in its doctrine and mischievous in its likely consequences. It infers abolition of traditional invited error doctrine from *United States v. Olano,* 507 U.S. 725, 733–34, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993), but *Olano* says nothing about "invited error." In *Olano,* the Supreme Court reversed us, because we had mistakenly reversed a conviction on the basis of an error to which no objection had been made and which had not been shown to be prejudicial. *Olano* says there is no error at all when a right has been waived, and waiver is the "intentional relinquishment or abandonment of a known right." *Id.* at 733, 113 S.Ct. at 1777. The majority says that an intentional relinquishment of a known right requires that the person know that there is a right to require something different of the court. Thus, defense counsel cannot, under the majority opinion, waive an error in a jury instruction unless defense counsel knows that the instruction is incorrect and submits it anyway. No ethical de-

fense lawyer would do such a thing, so it is not clear that any cases will fall into the category of invited error as limited by the majority opinion.

Our decision today is aberrant. The other circuits to address invited error doctrine since *Olano* have generally held that it survives unchanged. Many have explicitly considered the forfeiture-waiver distinction, and held that invited error should be treated as waiver, reasoning as I have urged above. For example, *United States v. Griffin*, 84 F.3d 912, 923–24 (7th Cir.1996), holds, citing *Olano*, that defense counsel's statement of approval for an instruction "amounts to a waiver of the right to claim error on appeal." The jury instruction was incorrect, but defense counsel's express approval "extinguished any right to appellate review" because it amounted to a "waiver" of the right to appeal on that point. This is the analysis we should follow. Likewise, *United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir.1996), interprets *Olano* to mean that if defendant requests a particular instruction which is given, "he has voluntarily waived any objection" to the instruction, so "plain error analysis does not apply because there is technically no 'error' to correct." Where defendant submits the instruction given, "we will not review ... even for plain error." *Id.* at 1542.

Likewise *United States v. Mitchell*, 85 F.3d 800 (1st Cir.1996) holds that where defense counsel affirmatively said he had no objection to an arguably erroneous procedure, "[t]hat action raises his later silence from mere forfeiture to waiver." *Id.* at 808. *United States v. Balter*, 91 F.3d 427, 434 (3d Cir.1996) ("we would not find that the district court erred even if Cutler could show that he was prejudiced.").

In *United States v. Tandon*, 111 F.3d 482, 487–89 (6th Cir.1997), the Sixth Circuit distinguished our en banc decision in *United States v. Keys*, 95 F.3d 874 (9th Cir.1996), on the ground that the error in *Keys* was merely forfeited, but the error claimed in the case at bar was invited. Because the "requested instruction invited the error," the Sixth Circuit held that plain error review was inapplicable. *Id.* at 489.

The Tenth Circuit, applying *Olano*, likewise held that "[a] defendant cannot invite a ruling and then have it set aside on appeal." *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir.1996). *Hardwell* holds that invited error "cannot be reviewed for plain error" because it is waived.

I disagree with the majority's reading of the authorities in Footnote 9 of the majority opinion. The cases, as explained above, do expressly consider *Olano* in connection with invited error, and conclude that invited error should be treated as waived, not forfeited. The quoted and summarized material from the cases shows that to be so. Footnote 9 attempts to distinguish the cases I have cited on the ground that the defendants had waived and not merely forfeited the error in those cases. But the majority's reasoning is circular. The reason, the only reason, the exact, expressly stated reason, why the error was treated as waived, was that it was invited. Our sister circuits reasoned in those cases that if error is invited, it should be treated as waived, not merely forfeited.

Invited error has generally been unreviewable. *See United States v. Miguel*, 111 F.3d 666, 673–74 (9th Cir.1997); *United States v. Baldwin*, 987 F.2d 1432, 1437 (9th Cir.1993); *United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991); *Guam v. Alvarez*, 763 F.2d 1036, 1037–38 (9th Cir.1985); *United States v. Alexander*, 695 F.2d 398, 402 (9th Cir. 1982); *Sherwin v. United States*, 320 F.2d 137, 147 (9th Cir.1963). The exception to this rule has been narrowly limited to "the most 'exceptional situation'" where reversal is "necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice." *United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991).

Invited error doctrine has been around for too long to suppose that the Supreme Court would have tossed it away without even mentioning it. *See, e.g., Philadelphia, Wilmington and Baltimore Railroad Company v. Howard*, 54 U.S. (13 How.) 307, 343–44, 14 L.Ed. 157 (1851) (in upholding instruction attacked by defendants, "it is ... conclusive" that defendants requested substantially similar instruction); *Wells v. United States*, 257 F. 605, 619–20 (9th Cir.1919) (party may not

complain of instruction it invited). Courts have long recognized its "wide and varied application" throughout a trial, *Alabama Great Southern R. Co. v. Johnson,* 140 F.2d 968, 971 (5th Cir.1944), when the pressures on judges to make quick decisions are great.

The majority decision confuses knowledge that one is waiving a particular right with knowledge that one is waiving the right to appeal error, known or unknown. All of us who have practiced on the civil side have used releases with the standard language releasing "any and all claims, known or unknown." Invited error is likewise an abandonment of all appellate claims of error, known or unknown, affected by the invitation. In civil cases, a plaintiff needs the power to release unknown claims in order to get the most money for the claim he knows about, because otherwise he cannot sell the defendant legal insulation from claims he may think of or discover later. Likewise, a criminal defendant needs the ability to have his lawyer say to the judge, "if you do what we request, you will not be reversed because of it," as an inducement to persuade the judge to comply with requests the correctness of which the judge does not have time to research.

A false presupposition underlies the majority's analysis. The majority imagines a lawyer who, if competent, knows of every decision bearing on any point of law arising in his case. There is no such lawyer. Lawyers make judgments, not only which known rights to assert, but also which rights are worth looking for. The majority opinion says that "there is no evidence that Cruz and Perez considered submitting" a correct instruction and decided against it for tactical reasons, and "the record reveals that" the defendants were unaware of *Mendoza,* so the right to a correct instruction cannot be treated as waived. This reasoning implies that the defense could not waive its right to appeal omission of the "during and in relation to" language from the instruction it invited, unless defense counsel had found and read *Mendoza,* so that they would know of the right to "during and in relation to" language.

The law is so vast that all of us are necessarily ignorant of most of it at any particular time. Were it not for the essential help of counsel, supplemented by our law clerks' research, even my learned colleagues might not know of every decision bearing on each issue coming before us, and I know that I would not. Preparation for trial is potentially infinite, but time is most assuredly finite. A lawyer's most critical decisions are often how to use the very limited time available for preparation of a defense. Defense preparation may include trips to the jail for client interviews, reading whatever discovery the defense can get, examining real evidence such as audio and videotapes, finding and interviewing witnesses, researching legal questions likely to be at issue, drafting motions and oppositions, drafting jury instructions, preparing real evidence for use at trial, cajoling or compelling witnesses to appear at trial, negotiating toward a plea, and preparing outlines for direct and cross examinations.

Lawyers do not research every possible issue of law in every case. Nor should they. A lawyer necessarily and properly exercises professional judgment about how to allocate the limited time for preparation in a way likely to produce the most benefit for the client. These time allocation decisions are by logical necessity made in partial or complete ignorance of what would be accomplished if time were allocated differently. Sometimes researching the law is a waste of time, while finding and talking to a witness would produce a defense bonanza. Often there is not enough time to do both to the maximum possible extent. Experienced lawyers usually know what they are doing and are acting wisely for their clients, when they make their decisions about what to do, and what need not be done, to prepare the case.

In the case at bar, the lawyers did not know about *Mendoza,* so far as the record shows. The majority's conclusion that Cruz and Perez were not prejudiced by omission of the "in relation to" element shows that the lawyers were entirely correct in not wasting their time finding out about *Mendoza.* A couple of hours in the law library finding *Mendoza,* reading it, and drafting a revised instruction, would have been a waste of time, because as the majority concludes, an in-

struction expanding upon the "in relation to" element would not have gotten their clients acquitted. Obviously a jury was not going to acquit defendants who sold heroin for guns, carried guns to narcotics sales, and sat on a gun or chambered a round during their narcotics arrests, on the theory that perhaps their possession and carrying were independent of, and not "during and in relation to," their drug crimes. The majority's conclusion, that we should affirm despite the error, shows that the defense lawyers were right in not allocating the time necessary to find *Mendoza.*

Though the majority is plainly correct that there was no prejudice, the majority underestimates the sagacity of defense counsel. Defense counsel probably were ignorant of *Mendoza,* but knew enough about the case to know that their clients would not be prejudiced by omission of the research which would have uncovered it. Defense counsel doubtless knew just what we have concluded, that "in relation to" did not matter to this case. Had it mattered, defense counsel would have wondered whether some sort of instruction could be drafted that would enable a jury to acquit based on this, and would have spent some time in the law library and found *Mendoza.* By concluding that we should affirm despite the error, we conclude some years after the lawyers decided how to prepare the defense that it would have made no difference to add "during and in relation to" language to the instruction. So the lawyers were right—the research that would have turned up *Mendoza* would have been waste of time. Scarce time.

We mistakenly say "the lawyer didn't know about *Mendoza,* so he did not intentionally relinquish a known right." The lawyer made his important decision earlier, when he elected not to spend time in the law library researching an issue that would not affect the outcome. Then when he submitted the instruction, the lawyer abandoned whatever appellate claim might derive from rights, known or unknown, to a different instruction.

Our addition of a new element to invited error doctrine today, that the record show knowledge by the defense of the error in its own invitation, is inconsistent with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). The consequence is likely to be weakening of defense counsel's position at trial, as well as unreasonable appellate reversals of guilty defendants' convictions. Invited error doctrine is not only a tool that helps the prosecution hold onto convictions on appeal despite errors. At trial, invited error doctrine works for the defense.

Traditional invited error doctrine lets trial judges give defense counsel leeway to manage their cases as they and their clients think best. In response to many defense requests before and during trial, the judge says to himself, "I'm not sure defense counsel is right, but I should let the defense run the defense." Judges freely allow defense counsel to run their cases, because there has traditionally been no risk of reversal for invited error.

If judgments can be routinely reversed for invited error, judges are not likely to take many chances on defense counsel's proposed instruction language. They will just use their own boilerplate, which is often harder for juries to understand because it is so general.

If today's decision applies more broadly, as to examination of witnesses, the effect on trials will be dramatic. Judges will call bench conferences if they think defense counsel is making a mistake, to demand justification for apparently failing to exercise a right. Prosecutors will "ask to oversee defense counsel's conduct at trial—to ensure against reversal." *United States v. Decoster,* 624 F.2d 196, 208 (D.C.Cir.1976).

> If the government were required to prove that its adversary defense counsel was adequate, it would be strongly motivated and well advised during a criminal trial, in order to protect the prospect of guilty verdicts, to oversee the major decisions and activities of defense counsel and the accused that affect trial. Performing this function would, as a practical matter, require the prosecution to probe what has

heretofore been a sacrosanct area-the highly confidential relationship between a criminal defendant and his lawyer.

*Id.* at 228 (concurring opinion). This reasoning applies with equal force to the invited error context. This can be very destructive of legitimate and important defense tactics. Defendants usually do not have the FBI, DEA, offers of immunity and lenient sentences, and the other powerful tools of the prosecution to work with, nor do they get much discovery in federal proceedings. If prosecution witnesses lie, defense counsel often need the leeway to ask what sound like obtuse questions, but are really intended to surprise the witnesses, in order to expose the lies. If defense counsel are interrupted and forced to justify what they are doing, much truth will not come out, and more innocent people will be convicted.

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. But it cannot be deferential, if on appeal we are going to look for evidence that the defense knew of the right being waived, and then waived it intentionally. Worse, our inquiry into whether defense counsel intentionally waived a known right is by its very nature corrosive. *Cf. Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065–66. At trial, judges will have to ask defense counsel if they realize they are giving up rights their clients have, an inquiry sure to reduce defendant's confidence in his lawyer, and make it harder for the lawyer to manage the case effectively on his client's behalf. On appeal, defense lawyers will feel compelled to assert that they, or predecessor counsel, gave up rights in ignorance, leaving us to decide whether they are lying.

How will judges make that determination? Shall judges favor regulars, such as local assistant United States attorneys and federal public defenders? Shall judges cross-examine lawyers to see how honest they seem? Shall we ruin lawyers' reputations by making express determinations that they lied about their purported ignorance? Shall defense lawyers be told at continuing legal education programs that effective representation requires them to plant some error in the record as insurance against convictions? *See United States v. Boyd,* 86 F.3d 719, 721–22 (7th Cir.1996) ("Many a defendant would like to plant an error and grow a risk-free trial"); *Alabama Great Southern,* 140 F.2d at 971 (invited error doctrine "prevents a litigant from speculating on a verdict, and then, when the speculation turns out badly, escaping the consequences of having done so"). All we need to do to avoid this corrosiveness is to leave invited error doctrine alone.

The moral principle of estoppel is at the heart of invited error doctrine. Invited error doctrine has been called "estoppel to allege error." *Id.* at 971. It is wrong for the defense to ask a trial judge to do something, and then ask an appellate court to reverse because the trial judge did what was requested. Lawyers usually are very intelligent and capable people. They necessarily know more about their cases than the judges trying them, because the judges do not have secret discussions with the defendants, or find and interview witnesses. Defendants should be bound by their lawyers' acts on their behalf, because judges properly rely on defense counsel's superior knowledge of the defense's best interests and duty to pursue them. *Cf. Boyd,* 86 F.3d at 721–24. There is no moral justification for imposing on society the risk of unpunished or repeated crime, inevitable in some percentage of reversed convictions, because of errors which defendants invited trial judges to make.