**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

JESUS RODRIGUEZ-RODRIGUEZ, a/k/a
Jesus Rodriguez, Joe Oraz
Gutierrez, Jesus Mendoza, Jose
Luis Alvarez Mendoza, Jesus
Rodriguez Rodrigez, Jesus
Mendoza Rodriguez, Jesus
Mendoza Rodriquiez and
"Shoney",
              *Defendant-Appellant.*

No. 05-50202

D.C. No.
CR-04-00078-DSF

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Submitted February 10, 2006*
Pasadena, California

Filed March 22, 2006

Before: Robert R. Beezer, Thomas G. Nelson, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Beezer

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Kathryn A. Young, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Michael R. Wilner, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

## OPINION

BEEZER, Circuit Judge:

Defendant Jesus Rodriguez-Rodriguez pleaded guilty to one count of illegal reentry following deportation in violation of 8 U.S.C. § 1326(a), b(2). The district court sentenced him to a term of 77 months followed by three years supervised release. One of the conditions of release requires Rodriguez-Rodriguez to report to the probation office for instructions within 72 hours of release from custody or reentry into the United States. Rodriguez-Rodriguez appeals the sentence on the grounds that it is unreasonable under *United States v. Booker*, 543 U.S. 220 (2005), and that the reporting condition violates his Fifth Amendment right against self-incrimination. Because the sentence is reasonable and the reporting condition does not violate the Fifth Amendment, we affirm.

I

Rodriguez-Rodriguez was born in Mexico and brought to the United States by his parents at the age of six months. His parents and siblings all live in the United States; he attended school in the United States, has worked in the United States and considers the United States his home. He is not a citizen of the United States, however, and has been deported on at least six occasions.

In January 2004, Rodriguez-Rodriguez was found in a Los Angeles county jail. The Government charged Rodriguez-Rodriguez with three counts of illegal reentry following deportation in violation of 8 U.S.C. § 1326(a), (b)(2). At his plea hearing, he pleaded guilty to one count and stated he had returned to the United States because his son was badly injured and he wanted to see how he was doing. While in custody, Rodriguez-Rodriguez married a woman also in custody for illegal reentry following deportation. His wife owns land

in Mexico; Rodriguez-Rodriguez claims they intend to return there to live and work after serving their sentences.

The pre-sentence report calculated a sentence range of 77-96 months. The district court sentenced Rodriguez-Rodriguez to 77 months in custody and a term of three years supervised release subject to several conditions. One of these conditions requires that "within 72 hours of release from any custody or any reentry to the United States during the period of court-ordered supervision, the defendant shall report for instructions to the U.S. Probation Office . . . ." Rodriguez-Rodriguez timely appeals.

## II

Following *United States v. Booker* we review sentences imposed by district courts within the suggested guideline range for reasonableness. *United States v. Plouffe*, 436 F.3d 1062, 1063 (9th Cir. 2006); *see also United States v. Ameline*, 409 F.3d 1073, 1075 (9th Cir. 2005) (holding that if, on remand, a district court determines a sentence imposed pursuant to the guidelines would have been the same if it had known the guidelines were advisory, "the original sentence will stand[ ] subject to appellate review for reasonableness").

Although *Booker* rendered the Sentencing Guidelines advisory, district courts must "consult [the guidelines] and take them into account when sentencing." *Booker*, 543 U.S. at 264. In determining an appropriate sentence, district courts must consider the applicable guideline range, as well as the goals and factors enumerated in 18 U.S.C. § 3553(a). *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006). Section 3553(a) states that a district court should impose a sentence "sufficient, but not greater than necessary" to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public . . . ; and to provide the defendant with needed . . . training, medical

care, or other correctional treatment . . . ." § 3553(a)(2). The district court also should weigh factors such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the kinds of sentences available;" "the [applicable] sentencing range[;]" the articulated policy goals of the guidelines; "the need to avoid unwarranted sentence disparities" among similar defendants; and "the need to provide restitution to any victims of the offense." § 3553(a)(1), (3)-(7).

**[1]** Rodriguez-Rodriguez argues the sentence imposed on him is unreasonable on several grounds. First, he argues the district court relied on the fact that he has committed "numerous serious and violent crimes," when only one crime was violent. The pre-sentence report indicates that Rodriguez-Rodriguez has been convicted of grand theft auto, second degree burglary, second degree robbery, being a felon in possession of a firearm and being under the influence of a controlled substance. The district court was not mistaken that at the time of sentencing Rodriguez-Rodriguez had begun committing crimes over fifteen years earlier, several of which were serious and one of which was drug related. The fact that only one was violent (a conviction for second degree robbery where Rodriguez-Rodriguez carjacked the victim by threatening him with a screwdriver) does not render the weight the district court afforded his criminal history pursuant to § 3553(a)(1) unreasonable.

**[2]** Rodriguez-Rodriguez also argues that the district court erroneously applied the pre-*Booker* standard for cultural assimilation to its consideration pursuant to § 3553(a)(1). The record belies this claim and rather demonstrates that the district court considered Rodriguez-Rodriguez's claim of cultural assimilation fully cognizant that neither the guideline range nor the pre-*Booker* standard for cultural assimilation were binding. The district court stated, "[The] defendant correctly argues that the guidelines are now only advisory and the Court has significantly more freedom to sentence a defendant

to less time in prison than might otherwise have been indicated by the guidelines[ ]" and noted "[the cases discussing cultural assimilation] still have some application, even though the guidelines are now only advisory." The district court accepted as true Rodriguez-Rodriguez's assertions about the nature of his arrival and time spent in the United States, but determined these factors were counterbalanced by his extensive criminal history. This was not an unreasonable determination.

**[3]** Finally, the district court's skepticism of Rodriguez-Rodriguez's proffered reason for returning to the United States and his intention not to return again was also not unreasonable. Although he often asserted he returned to the United States out of concern for his son, Rodriguez-Rodriguez admitted during the sentencing hearing that his son's health was not his sole reason for returning and referred again to his strong cultural ties to the United States. The court also observed that although Rodriguez-Rodriguez claims he and his wife plan to settle in Mexico together, both arrived in the United States at a young age and both have been convicted of illegal re-entry. In light of these facts, the district court's doubt regarding Rodriguez-Rodriguez's representations was reasonable.

**[4]** Considering the factors listed in § 3553(a), such as Rodriguez-Rodriguez's criminal history, the likelihood that he would attempt re-entry and the sentence calculated under the guidelines, the district court determined that a sentence of 77 months was "sufficient but no greater than necessary" to fulfill the goals of § 3553(a)(2). The district court did not act unreasonably in imposing the sentence.[1]

---

[1]Because each argument advanced by Rodriguez-Rodriguez fails, we need not decide today whether, in a case where one aspect of the district court's determination is unreasonable, that necessarily means the sentence is unreasonable within the meaning of *Booker*.

III

Rodriguez-Rodriguez also argues that the reporting condition violates his Fifth Amendment privilege against self-incrimination. The government defends the condition on three grounds: waiver, ripeness and the merits.

**[5]** Although Rodriguez-Rodriguez did not object to the imposition of the reporting condition at his sentencing hearing, his right to challenge it has not been waived. Waiver must be distinguished from forfeiture. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Forfeiture does not extinguish an error, and in the absence of waiver, a forfeited error is subject to review. *Id.* at 733-34. There is no evidence in the record that Rodriguez-Rodriguez intended to relinquish or abandon his rights under the Fifth Amendment. The error was forfeited, not waived, and the reporting condition is subject to review. *See United States v. Perez*, 116 F.3d 840, 842 (9th Cir. 1997) (en banc).[2]

**[6]** We hold that Rodriguez-Rodriguez's challenge is ripe. Ripeness doctrine requires that there exist a " 'case or controversy' "and that "the issues presented are 'definite and concrete, not hypothetical or abstract.' " *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)). The government argues Rodriguez-Rodriguez's challenge is not ripe because any injury to Rodriguez-

[2]*Perez* impliedly overruled in relevant part *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir. 1983), the case that underlies the cases cited by the Government for the proposition that Rodriguez-Rodriguez waived his right to challenge the reporting condition. *See Perez*, 116 F.3d at 844-46 (discussing considerations relevant to determining whether an error has been waived or forfeited).

Rodriguez is hypothetical, as it depends on several contingencies that have yet to occur, such as the completion of his 77-month sentence, deportation and illegal return to the United States. The reporting condition is a part of the district court's sentence, which is a final judgment subject to immediate appeal. *See* 18 U.S.C. § 3742(a). We have "stated clearly that 'a defendant may challenge the legality of a supervised release condition [by] direct appeal.' " *United States v. Williams*, 356 F.3d 1045, 1051 (9th Cir. 2004) (quoting *United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002)). We do not require the violation of a specified supervised release condition before permitting appellate review. *Id*. Rodriguez-Rodriguez asserts a facial challenge to a condition imposed upon him at the time of his sentence. His claim is ripe for review.

Because Rodriguez-Rodriguez failed to object to the reporting condition at the time of sentencing, we review for plain error. *Perez*, 116 F.3d at 846; *see also Ameline*, 409 F.3d at 1078 (applying the plain error analysis to a Sixth Amendment challenge of a sentence that was not raised at the time of sentencing). "Plain error is '(1) error, (2) that is plain, and (3) that affects substantial rights.' " *Ameline*, 409 F.3d at 1078 (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)). If the imposition of the condition is plain error, we will grant relief if it " 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id*. (quoting *Cotton*, 535 U.S. at 631).

**[7]** Rodriguez-Rodriguez argues the reporting condition constitutes plain error because it creates a "classic penalty situation" as described in *Minnesota v. Murphy*, 465 U.S. 420, 434 (1984). A classic penalty situation arises when the state compels an individual to appear and testify, and induces him to forgo his Fifth Amendment privilege against self-incrimination by threatening sanctions if he invokes it. *Id*. Rodriguez-Rodriguez asserts the condition creates a penalty situation because it compels him to report to the probation

office thereby incriminating himself in a new violation of § 1326, and induces him to forgo his Fifth Amendment privilege against self-incrimination by threatening the possible revocation of his supervised release if he invokes it by failing to report.

**[8]** The reporting condition does not create a classic penalty situation because it does not require Rodriguez-Rodriguez to incriminate himself. The Fifth Amendment grants persons the privilege not to "provide the State with evidence of a testimonial or communicative nature." *Schmerber v. California*, 384 U.S. 757, 761 (1966). Rodriguez-Rodriguez's presence at the probation office does not communicate any information that will necessarily subject him to prosecution. Section 1326 includes exceptions from prosecution for aliens who have received consent to return to the United States from the Attorney General. 8 U.S.C. § 1326(a)(2)(A). Because such an exception exists, merely being present in the probation office is not sufficient to incriminate him in a new violation of § 1326.

**[9]** To incriminate himself in a new violation of § 1326, Rodriguez-Rodriguez would have to be present in the probation office illegally and he would have to admit as much to the probation officer. The reporting condition does not compel Rodriguez-Rodriguez to make such an admission. In *Murphy*, the Supreme Court held that a probation condition requiring the probationer to report to a probation officer and "be truthful with the probation officer 'in all matters' " does not violate the Fifth Amendment because the condition does not prohibit the probationer from refusing to respond to a question if the answer is likely to incriminate him. 485 U.S. at 422, 437. In *United States v. Saechao*, we distinguished the situation in *Murphy* from one in which the probationer is required to "*answer 'all* reasonable inquiries.' " 418 F.3d 1073, 1078 (9th Cir. 2005). We held this condition does violate the Fifth Amendment because, unlike the condition in *Murphy*, the probationer is not permitted to invoke the privi-

lege against self-incrimination without jeopardizing his supervised release. *Id.* Rodriguez-Rodriguez is not subject to a condition like the one found impermissible in *Saechao* requiring him to answer all reasonable inquiries; he is not even subject to a condition like the one found permissible in *Murphy* requiring him to be truthful in all matters. Rodriguez-Rodriguez is required only to report to the probation office for instructions. If asked a question the answer to which is likely to incriminate him, he is free to invoke his Fifth Amendment privilege and refuse to respond. On its face, the reporting condition does not violate his right against self-incrimination under the Fifth Amendment and its imposition was not plain error.

## IV

Because the sentence imposed is reasonable under *United States v. Booker* and the reporting condition does not violate the Defendant's Fifth Amendment right, we **AFFIRM**.